# Exhibit C

$2,500,000
MENDOCINO COAST HEALTH CARE DISTRICT
2011 HIT/EHR Taxable Promissory Notes

## NOTE PURCHASE AGREEMENT

December 8, 2011

Mendocino Coast Health Care District
700 River Drive
Fort Bragg, CA 95437

Ladies and Gentlemen:

    The undersigned, UHC of California (the "Purchaser"), offers to enter into this agreement with the Mendocino Coast Health Care District (the "District"), which, upon your acceptance hereof, will be binding upon the District and the Purchaser. This offer is made subject to the written acceptance of this Note Purchase Agreement by the delivery of such acceptance to the Purchaser at or prior to 5:00 P.M., Pacific time, on the date hereof.

    1. <u>Purchase and Sale of the Notes</u>. Upon the terms and conditions and in reliance upon the representations, warranties and agreements herein set forth, the Purchaser hereby agrees to purchase, and the District hereby agrees to deliver to the Purchaser, all (but not less than all) of $2,500,000 in aggregate principal amount of the District's 2011 HIT/EHR Taxable Promissory Notes (the "Notes").

    The purchase price of the Notes shall be $2,500,000 (being equal to the aggregate principal amount of the Notes).

    The District acknowledges and agrees that (i) the purchase and sale of the Notes pursuant to this Note Purchase Agreement is an arm's-length commercial transaction between the District and the Purchaser, (ii) in connection with such transaction, the Purchaser is acting solely as a principal and not as an advisor (including, without limitation, a Municipal Advisor (as such term is defined in section 975(e) of the Dodd-Frank Wall Street Reform and Consumer Protection Act)), agent or a fiduciary of the District, (iii) the Purchaser has financial and other interests that differ from those of the District and (iv) the District has consulted with its own legal and financial advisors to the extent it deemed appropriate in connection with the offering of the Notes.

    2. <u>The Notes</u>. The Notes will be issued pursuant to the provisions of The Local Health Care District Law of the State of California (constituting Division 23 of the California Health and Safety Code) together, herein called the "Law"), an indenture, dated as of December 1, 2011 (the "Indenture"), by between the District and The Bank of New York Mellon Trust Company, N.A., Los Angeles, California, as trustee (the "Trustee"), and a resolution adopted by the Board of Director of the District on November 1, 2011 (the "Resolution"). The Notes are issued for the purpose of financing certain health information technology/electronic health

records (HIT/EHR) equipment and software for the District (the "Project"). All capitalized terms not otherwise defined shall have the meanings set forth in the Indenture.

The Notes are payable from all legally available revenues, income, receipts and moneys received by or on behalf of the District, excluding gifts, grants, bequests, donations and contributions to the extent specifically restricted by the donor to a particular purpose inconsistent with their use for the payment of debt service on the Notes and excluding ad valorem tax revenue securing general obligation bonds of the District (the "Available Moneys"); *provided, however*, that the application of Available Moneys for the payment of debt service on the Notes is subject to any pledges of such revenues, income, receipts and moneys received by or on behalf of the District heretofore or hereafter made by the District

The Notes will be dated as of their date of delivery. The Notes will mature on the dates and in the principal amounts set forth in Exhibit A attached hereto. Interest on the Notes is payable semiannually on each June 1 and December 1, commencing June 1, 2013, at the rates set forth in Exhibit A attached hereto. The Notes will be subject to redemption prior to maturity on the dates and at the prices set forth in Exhibit B attached hereto.

3. <u>Use of Documents</u>. The District hereby authorizes the Purchaser to use, in connection with the offer and sale of the Notes, this Note Purchase Agreement, the Indenture, the Resolution and all information contained herein and therein and all of the documents, certificates or statements furnished by the District to the Purchaser in connection with the transactions contemplated by this Note Purchase Agreement.

4. <u>Private Placement; Notes Constitute Investment of Purchaser; Representations and Warranties of Purchaser</u>.

(a) The Purchaser has sufficient knowledge and experience in financial and business matters, including purchase and ownership of municipal and other obligations of a nature similar to the Notes to be able to evaluate the risks and merits of the investment represented by the purchase of the Notes.

(b) The Purchaser is acquiring the Notes for its own account and not with a view to, or for sale in connection with, any distribution of the Notes or any part thereof. The Purchaser has not offered to sell, solicited offers to buy, or agreed to sell the Notes or any part thereof, and the Purchaser has no current intention of reselling or otherwise disposing of the Notes *provided, however*, such representation shall not preclude the Purchaser from transferring or selling of the Notes in accordance with the Resolution. The Purchaser is not acting in a broker-dealer capacity in connection with its purchase of the Notes.

(c) As a sophisticated investor, the Purchaser has made its own credit inquiry and analysis with respect to the District and the Notes and has made an independent credit decision based upon such inquiry and analysis and in reliance on the truth, accuracy, and completeness of the representations and warranties of the District set forth in the Resolution and this Note Purchase Agreement and in the information set forth in any materials submitted to the Purchaser by the District. The District has furnished to the Purchaser all the information which the Purchaser, as a reasonable investor, has requested of the District as a result of the Purchaser having attached significance thereto in making its investment decision with respect to the Notes, and the Purchaser has had the opportunity to ask questions of and receive answers from knowledgeable individuals concerning the District and the Notes. The Purchaser is able and willing to bear the economic risk of the purchase and ownership of the Notes.

(d) The Purchaser understands that the Notes have not been registered under the United States Securities Act of 1933 or under any state securities laws. The Purchaser agrees that it will comply with any applicable state and federal securities laws then in effect with

respect to any disposition of the Notes by it, and further acknowledges that any current exemption from registration of the Notes does not affect or diminish such requirements.

(e) The Purchaser has authority to purchase the Notes and to execute this Note Purchase Agreement and any other instruments and documents required to be executed by the Purchaser in connection with the purchase of the Notes. The undersigned is a duly appointed, qualified, and acting officer of the Purchaser and is authorized to cause the Purchaser to make the representations and warranties contained herein by execution of this Note Purchase Agreement on behalf of the Purchaser.

(f) In entering into this transaction, the Purchaser has not relied upon any representations or opinions of the Paying Agent, or its agents, relating to the legal consequences or other aspects of its investment in the Notes.

(g) The Purchaser has been informed that the Notes (i) have not been and will not be registered or otherwise qualified for sale under the "Blue Sky" laws and regulations of any jurisdiction, and (ii) will not be listed on any stock or other securities exchange.

(h) The Purchaser acknowledges that the Notes are transferable with certain requirements, as described in the Resolution.

(i) The Purchaser acknowledges that the Notes are exempt from the requirements of Rule 15c2-12 of the Securities and Exchange Commission and that the District has not undertaken to provide any continuing disclosure with respect to the Notes.

5. <u>Closing</u>. At 8:00 A.M., California time, on December 9, 2011, or at such other time or on such other date as shall have been mutually agreed upon by you and us (the "Closing"), you will deliver to us (except as otherwise provided in the Indenture), at such place as we may mutually agree upon, the Notes in fully registered book-entry form, duly executed and registered in the name of the Purchaser, and in San Francisco, California, the other documents hereinafter mentioned; and we will accept such delivery and pay the purchase price thereof in immediately available funds by check, draft or wire transfer to or upon the order of the Paying Agent on behalf of the District.

6. <u>Representations, Warranties and Agreements of the District</u>. The District hereby represents, warrants and agrees with the Purchaser that:

(a) *Due Organization*. The District is a local health care district duly organized and validly existing under the laws of the State of California, with the power to request the issuance of the Notes.

(b) *Due Authorization*. (i) At or prior to the Closing, the District will have taken all action required to be taken by it to authorize the issuance and delivery of the Notes; (ii) the District has full legal right, power and authority to enter into this Note Purchase Agreement and the Indenture, to adopt the Resolution, to perform its obligations under each such document or instrument, and to carry out and effectuate the transactions contemplated by this Note Purchase Agreement, Indenture and the Resolution; (iii) the execution and delivery or adoption of, and the performance by the District of the obligations contained in the Notes, the Resolution, Indenture and this Note Purchase Agreement have been duly authorized and such authorization shall be in full force and effect at the time of the Closing; (iv) this Note Purchase Agreement and the Indenture constitute the valid and legally binding obligations of the District, subject to bankruptcy, insolvency, reorganization, arrangement, moratorium, fraudulent conveyance and other laws relating to or affecting creditors' rights, to the application of equitable principles and to the exercise of judicial discretion in appropriate cases; and (v) the District has duly authorized the consummation by it of all transactions

contemplated by this Note Purchase Agreement and the Indenture. The District will not amend, terminate or rescind, and will not agree to any amendment, termination or rescission of the Resolution, the Indenture or this Note Purchase Agreement without the prior written consent of the Purchaser prior to the Closing Date.

(c) *Consents.* Other than adoption of the Resolution, no consent, approval, authorization, order, filing, registration, qualification, election or referendum of or by any court or governmental agency or public body whatsoever is required in connection with the issuance, delivery or sale of the Notes or the consummation of the other transactions effected or contemplated herein or hereby.

(d) *Internal Revenue Code.* The District has covenanted to comply with the Internal Revenue Code of 1986, as amended, with respect to the Notes.

(e) *No Conflicts.* To the best knowledge of the District, the issuance of the Notes, and the execution, delivery and performance of this Note Purchase Agreement, the Indenture the Resolution and the Notes, and the compliance with the provisions hereof do not conflict with or constitute on the part of the District a violation of or default under, the Constitution of the State of California or any existing law, charter, ordinance, regulation, decree, order or resolution and do not conflict with or result in a violation or breach of, or constitute a default under, any agreement, indenture, mortgage, lease or other instrument to which the District is a party or by which it is bound or to which it is subject.

(f) *Litigation.* As of the time of acceptance hereof, based on the advice of counsel to the District, no action, suit, proceeding, hearing or investigation is pending or, to the best knowledge of the District, threatened against the District: (i) in any way affecting the existence of the District or in any way challenging the respective powers of the several offices or of the titles of the officials of the District to such offices; or (ii) seeking to restrain or enjoin the sale, issuance or delivery of any of the Notes, the application of the proceeds of the sale of the Notes, or the amounts available to pay the principal of and interest on the Notes, or in any way contesting or affecting the validity or enforceability of the Notes, this Note Purchase Agreement, the Indenture or the Resolution or contesting the powers of the District or its authority with respect to the Notes, the Resolution, the Indenture or this Note Purchase Agreement; or (iii) in which a final adverse decision could (a) materially adversely affect the operations of the District or the consummation of the transactions contemplated by this Note Purchase Agreement, the Indenture or the Resolution, (b) declare this Note Purchase Agreement or the Indenture to be invalid or unenforceable in whole or in material part, or (c) adversely affect the exemption of interest on the Notes from California personal income taxation.

(g) *No Other Debt.* Between the date hereof and the Closing, without the prior written consent of the Purchaser, the District will not have issued any bonds, notes or certificates of participation.

(h) *Certificates.* Any certificates signed by any officer of the District and delivered to the Purchaser shall be deemed a representation by the District to the Purchaser, but not by the person signing the same, as to the statements made therein.

7. <u>Covenants of the District</u>. The District covenants and agrees with the Purchaser that the District will apply the proceeds from the sale of the Notes for the purposes specified in the Resolution.

8. <u>Conditions to Closing</u>. The Purchaser has entered into this Note Purchase Agreement in reliance upon the representations and warranties of the District contained herein and the

performance by the District of its obligations hereunder, both as of the date hereof and as of the date of Closing. The Purchaser's obligations under this Note Purchase Agreement are and shall be subject at the option of the Purchaser, to the following further conditions at the Closing:

(a) *Representations True*. The representations and warranties of the District contained herein shall be true, complete and correct in all material respects at the date hereof and at and as of the Closing as if made at and as of the Closing, and the statements made in all certificates and other documents delivered to the Purchaser at the Closing pursuant hereto shall be true, complete and correct in all material respects on the date of the Closing; and the District shall be in compliance with each of the agreements made by it in this Note Purchase Agreement;

(b) *Obligations Performed*. At the time of the Closing, (i) this Note Purchase Agreement, the Indenture and the Resolution shall be in full force and effect and shall not have been amended, modified or supplemented except as may have been agreed to in writing by the Purchaser; (ii) all actions which, in the opinion of Quint & Thimmig LLP ("Bond Counsel"), shall be necessary in connection with the transactions contemplated hereby shall have been duly taken and shall be in full force and effect; and (iii) the District shall perform or have performed all of its obligations required under or specified in the Resolution, this Note Purchase Agreement or the Indenture to be performed at or prior to the Closing; and

(c) *Adverse Rulings*. No decision, ruling or finding shall have been entered by any court or governmental authority since the date of this Note Purchase Agreement (and not reversed on appeal or otherwise set aside), or to the best knowledge of the District, pending or threatened which has any of the effects described in Section 6(f) hereof.

(e) *Delivery of Documents*. At or prior to the date of the Closing, Bond Counsel shall deliver sufficient copies of the following documents, in each case dated as of the Closing Date and satisfactory in form and substance to the Purchaser:

(1) <u>Bond Opinion</u>. An approving opinion of Bond Counsel, as to the validity of the Notes, dated the date of the Closing, addressed to the District;

(2) <u>Reliance Letter</u>. A reliance letter from Bond Counsel to the effect that the Purchaser can rely upon the approving opinion described in (e)(1) above;

(3) <u>Resolution</u>. A certificate, together with fully executed copies of the Resolution, of the Secretary of the District Board of Directors to the effect that:

(i) such copies are true and correct copies of the Resolution; and

(ii) that the Resolution was duly adopted and has not been modified, amended, rescinded or revoked and is in full force and effect on the date of the Closing.

(4) <u>Other Documents</u>. Such additional legal opinions, certificates, proceedings, instruments and other documents as the Purchaser may reasonably request to evidence compliance (i) by the District with legal requirements, (ii) the truth and accuracy, as of the time of Closing, of the representations of the District herein contained, and (iii) the due performance or satisfaction by the District at or prior to such time of all agreements then to be performed and all conditions then to be satisfied by the District; and

(f) *Termination*. Notwithstanding anything to the contrary herein contained, if for any reason whatsoever the Notes shall not have been delivered by the District to the Purchaser prior to the close of business, California Time, on December 9, 2011, then the obligation to purchase Notes hereunder shall terminate and be of no further force or effect except with respect to the obligations of the District and the Purchaser under Section 10 hereof.

If the District shall be unable to satisfy the conditions to the Purchaser's obligations contained in this Note Purchase Agreement or if the Purchaser's obligations shall be terminated for any reason permitted by this Note Purchase Agreement, this Note Purchase Agreement may be canceled by the Purchaser at, or at any time prior to, the time of Closing. Notice of such cancellation shall be given to the District in writing, or by telephone or telegraph, confirmed in writing. Notwithstanding any provision herein to the contrary, the performance of any and all obligations of the District hereunder and the performance of any and all conditions contained herein for the benefit of the Purchaser may be waived by the Purchaser in writing at its sole discretion.

9. Conditions to Obligations of the District. The performance by the District of its obligations is conditioned upon (i) the performance by the Purchaser of its obligations hereunder; (ii) receipt by the District and the Purchaser of opinions and certificates being delivered at the Closing by persons and entities other than the District, and (III) the continuing validity of the Purchaser's representations and warranties made herein.

10. Costs and Expenses. The Purchaser agrees to pay all expenses relating to the issuance of the Notes as further described in the Indenture.

11. Notices. Any notice or other communication to be given under this Note Purchase Agreement (other than the acceptance hereof as specified in the first paragraph hereof) may be given by delivering the same in writing if to the District, to the address shown above, to the attention of its Chief Executive Officer, or if to the Purchaser, to UHC of California, 5995 Plaza Drive, Mail Code CA112-0267, Cypress, CA 90630, Attention: Mr. Steven P. Henry, CFA, Director, Treasury Investment Management, UnitedHealth Group.

12. Parties in Interest; Survival of Representations and Warranties. This Note Purchase Agreement when accepted by the District in writing as heretofore specified shall constitute the entire agreement among the District and the Purchaser. This Note Purchase Agreement is made solely for the benefit of the District and the Purchaser (including the successors or assigns of the Purchaser). No person shall acquire or have any rights hereunder or by virtue hereof. All representations, warranties and agreements of the District and the Purchaser in this Note Purchase Agreement shall survive regardless of (a) any investigation or any statement in respect thereof made by or on behalf of the Purchaser, (b) delivery of and payment by the Purchaser for the Notes hereunder, and (c) any termination of this Note Purchase Agreement.

13. Execution in Counterparts. This Note Purchase Agreement may be executed in several counterparts each of which shall be regarded as an original and all of which shall constitute but one and the same document.

14. *Applicable Law*. This Note Purchase Agreement shall be interpreted, governed and enforced in accordance with the law of the State of California applicable to contracts made and performed in such State.

Very truly yours,

UHC OF CALIFORNIA, as Purchaser

By _____
Thomas McGlinch,
*Vice President*

The foregoing is hereby agreed to and
accepted as of the date first above written:

MENDOCINO COAST HEALTH CARE
DISTRICT

By _*[signature]*_____
Raymond T. Hino,
*Chief Executive Officer*

By _*[signature]*_____
Wayne C. Allen,
*Chief Financial Officer*

14. <u>Applicable Law</u>. This Note Purchase Agreement shall be interpreted, governed and enforced in accordance with the law of the State of California applicable to contracts made and performed in such State.

Very truly yours,

UHC OF CALIFORNIA, as Purchaser

By _____
Thomas McGlinch,
*Vice President*

The foregoing is hereby agreed to and
accepted as of the date first above written:

MENDOCINO COAST HEALTH CARE
DISTRICT

By _____
Raymond T. Hino,
*Chief Executive Officer*

By _____
Wayne C. Allen,
*Chief Financial Officer*

# APPENDIX A

## INTEREST RATES, MATURITIES, DEBT SERVICE, AND OPTIONAL AND MANDATORY REDEMPTION PROVISIONS

### Maturity Schedule

| Maturity (December 1) | Principal Amount | Interest Rate |
|---|---|---|
| 2014 | $802,850 | 3.75% |
| 2015 | 832,957 | 3.75 |
| 2016 | 864,193 | 3.75 |

### Redemption Provisions

The Notes are subject to redemption at the option of the District as a whole or in part on any date from moneys deposited in the Special Redemption Account pursuant to the Indenture, at the principal amount thereof and interest accrued thereon to the date fixed for redemption, without premium. In order to create an incentive for the District to prepay the Notes, the District shall receive an incentive rebate of principal from the Owner for prepayment in whole prior to the maturity date of the Note, as follows:

| Prepayment Date | Rebate Amount |
|---|---|
| On or prior to 36 month anniversary of the Closing Date | 10% of original principal |
| On or prior to 42 month anniversary of Closing Date | 7.5% of original principal |
| On or prior to 48 month anniversary of Closing Date | 5% of original principal |