# Exhibit D

# INDENTURE OF TRUST

## Dated as of December 1, 2011

### by and between the

### MENDOCINO COAST HEALTH CARE DISTRICT

### and

### THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., as Trustee

Relating to
$2,500,000
MENDOCINO COAST HEALTH CARE DISTRICT
2011 HIT/EHR Taxable Promissory Notes

# TABLE OF CONTENTS

## ARTICLE I
### DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS'

Section 1.01. Definitions .................................................................................................... 2
Section 1.02. Content of Certificates and Opinions ............................................................ 4
Section 1.03. Interpretation ............................................................................................... 4

## ARTICLE II
### THE NOTES

Section 2.01. Authorization and Terms of Notes ............................................................... 5
Section 2.02. Form of Notes .............................................................................................. 5
Section 2.03. Execution of Notes ....................................................................................... 5
Section 2.04. No Transfer .................................................................................................. 5
Section 2.05. No Exchange ................................................................................................ 5

## ARTICLE III
### ISSUANCE OF NoteS; APPLICATION OF PROCEEDS'

Section 3.01. Issuance of Notes ......................................................................................... 6
Section 3.02. Application of Proceeds of Notes ................................................................. 6
Section 3.03. Costs of Issuance ......................................................................................... 6
Section 3.04. Validity of Notes ......................................................................................... 6

## ARTICLE IV
### REDEMPTION OF NOTES

Section 4.01. Terms of Redemption ................................................................................... 7
Section 4.02. Notice of Redemption .................................................................................. 7
Section 4.03. Partial Redemption of Notes ........................................................................ 7
Section 4.04. Effect of Redemption ................................................................................... 7

## ARTICLE V
### AVAILABLE MONEYS

Section 5.01. Debt Service Fund ....................................................................................... 8
Section 5.02. Allocation of Available Moneys ................................................................... 8
Section 5.03. Application of Interest Account .................................................................... 9
Section 5.04. Application of Principal Account .................................................................. 9
Section 5.05. Application of Redemption Fund .................................................................. 9
Section 5.06. No Investment of Moneys in Funds and Accounts ......................................... 9

## ARTICLE VI
### REPRESENTATIONS AND WARRANTIES OF THE DISTRICT

Section 6.01. Representations and Warranties of the District .............................................. 10

## ARTICLE VII
### PARTICULAR COVENANTS

Section 7.01. Punctual Payment ........................................................................................ 12
Section 7.02. Extension of Payment of Notes .................................................................... 12
Section 7.03. Accounting Records, Financial Statements and Reporting Requirements ......... 12
Section 7.04. Waiver of Laws ........................................................................................... 13

## ARTICLE VIII

### EVENTS OF DEFAULT AND REMEDIES OF NOTEOWNERS

Section 8.01. Events of Default ........................................................................................ 14
Section 8.02. Acceleration of Maturities ........................................................................... 15
Section 8.03. Application of Available Moneys and Other Funds After Default ............... 15
Section 8.04. Trustee to Represent Owners ....................................................................... 16
Section 8.05. Owner's Direction of Proceedings ............................................................... 16
Section 8.06. Limitation on Owner's Right to Sue ............................................................. 16
Section 8.07. Absolute Obligation of District .................................................................... 17
Section 8.08. Termination of Proceedings ......................................................................... 17
Section 8.09. Remedies Not Exclusive ............................................................................... 17
Section 8.10. No Waiver of Default .................................................................................... 17
Section 8.11. Exercise of Remedies ................................................................................... 17

## ARTICLE IX

### THE TRUSTEE

Section 9.01. Duties, Immunities and Liabilities of Trustee ............................................. 18
Section 9.02. Merger or Consolidation .............................................................................. 19
Section 9.03. Liability of Trustee ....................................................................................... 19
Section 9.04. Right of Trustee to Rely on Documents ...................................................... 20
Section 9.05. Preservation and Inspection of Documents ................................................. 21
Section 9.06. Compensation of Trustee ............................................................................. 21
Section 9.07. Indemnification ............................................................................................ 21

## ARTICLE X

### MODIFICATION OR AMENDMENT OF THIS INDENTURE

Section 10.01. Amendments Permitted ................................................................................ 22
Section 10.02. Effect of Supplemental Indenture ................................................................ 22
Section 10.03. Endorsement of Notes; Preparation of New Notes ...................................... 22
Section 10.04. Amendment of Particular Notes ................................................................... 22

## ARTICLE XI

### DISCHARGE OF INDENTURE

Section 11.01. Discharge of Indenture ................................................................................. 23

## ARTICLE XII

### MISCELLANEOUS

Section 12.01. Successor Is Deemed Included in All References to Predecessor ................ 24
Section 12.02. Limitation of Rights to Parties and Owner .................................................. 24
Section 12.03. Waiver of Notice .......................................................................................... 24
Section 12.04. Destruction of Notes .................................................................................... 24
Section 12.05. Severability of Invalid Provisions ............................................................... 24
Section 12.06. Notice to District and Trustee ..................................................................... 24
Section 12.07. Evidence of Rights of Owner ...................................................................... 24
Section 12.08. Disqualified Notes ....................................................................................... 25
Section 12.09. Money Held for Particular Notes ................................................................ 25
Section 12.10. Funds and Accounts ..................................................................................... 25
Section 12.11. Article and Section Headings and References ............................................. 25
Section 12.12. Waiver of Personal Liability ....................................................................... 26
Section 12.13. Execution in Several Counterparts .............................................................. 26
Section 12.14. Governing Law ............................................................................................ 26

EXHIBIT A:     FORM OF NOTE

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 4 of 32

# INDENTURE OF TRUST

THIS INDENTURE OF TRUST (this "Indenture"), made and entered into as of December 1, 2011, by and between MENDOCINO COAST HEALTH CARE DISTRICT, a local health care district of the State of California (the "District"), and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., a national banking association duly organized and existing under the laws of the United States of America and qualified to accept and administer the trusts hereby created (the "Trustee").

## W I T N E S S E T H :

WHEREAS, the District desires to finance certain health information technology/electronic health records (HIT/EHR) equipment and software (the "Project");

WHEREAS, the District finds and determines that, in order to finance the Project, it is in the best interests of the District at this time to issue its Mendocino Coast Health Care District 2011 HIT/EHR Taxable Promissory Notes (the "Notes");

WHEREAS, Notes constitute "promissory notes" and are being issued pursuant to the provisions of section 32130.2 of the California Health and Safety Code and the District hereby finds that the Project has a useful life equal to, or longer than, the term of the Notes;

WHEREAS, in order to provide for the execution and delivery of the Notes, to establish and declare the terms and conditions upon which the Notes are to be issued and secured and to secure the payment of the principal thereof and interest thereon, the District has authorized the execution and delivery of this Indenture; and

WHEREAS, the District has determined that all acts and proceedings required by law or necessary to make the Notes, when executed by the District, and duly issued, the valid, binding and legal limited obligations of the District, and to constitute this Indenture a valid and binding agreement for the uses and purposes herein set forth in accordance with its terms, have been done and taken, and the execution and delivery of this Indenture have been in all respects duly authorized;

NOW, THEREFORE, THIS INDENTURE WITNESSETH, that in order to secure the payment of the principal of, and the interest and premium, if any, on, all Notes at any time issued and outstanding under this Indenture, according to their tenor, and to secure the performance and observance of all the covenants and conditions therein and herein set forth, and to declare the terms and conditions upon and subject to which the Notes are to be issued and received, and in consideration of the premises and of the mutual covenants herein contained and of the purchase and acceptance of the Notes by the owners thereof, and for other valuable consideration, the receipt whereof is hereby acknowledged, the District does hereby covenant and agree with the Trustee for the benefit of the respective owners from time to time of the Notes, as follows:

# ARTICLE I

## DEFINITIONS; CONTENT OF CERTIFICATES AND OPINIONS

Section 1.01. <u>Definitions</u>. Unless the context otherwise requires, the terms defined in this Section 1.01 shall, for all purposes of this Indenture and of any Supplemental Indenture and of any certificate, opinion or other document herein mentioned, have the meanings herein specified, to be equally applicable to both the singular and plural forms of any of the terms herein defined. Unless otherwise defined in this Indenture, all terms used herein shall have the meanings assigned to such terms in the Law.

*"Authorized Representative"* means, with respect to the District, the President of its Board of Directors, its Chief Executive Officer, its Chief Financial Officer, or any other person designated as an Authorized Representative of the District by a Certificate of the District signed by the President of its Board of Directors, its Chief Executive Officer or its Chief Financial Officer and filed with the Trustee.

*"Available Moneys"* means all legally available moneys, income, receipts and moneys received by or on behalf of the District, excluding gifts, grants, bequests, donations and contributions to the extent specifically restricted by the donor to a particular purpose inconsistent with their use for the payment of debt service on the Notes and excluding ad valorem tax revenue securing general obligation bonds of the District; *provided, however,* that the application of Available Moneys hereunder for the payment of debt service on the Notes is subject to any pledges of such revenues, income, receipts and moneys received by or on behalf of the District heretofore or hereafter made by the District.

*"Board"* means the Board of Directors of the District.

*"Business Day"* means any day other than a Saturday, Sunday, or a day on which banking institutions in the State are authorized or obligated by law or executive order to be closed.

*"Certificate," "Statement," "Request," "Requisition"* and *"Order"* of the District mean, respectively, a written certificate, statement, request, requisition or order signed in the name of the District by an Authorized Representative of the District. Any such instrument and supporting opinions or representations, if any, may, but need not, be combined in a single instrument with any other instrument, opinion or representation, and the two or more so combined shall be read and construed as a single instrument. If and to the extent required by Section 1.02 of this Indenture, each such instrument shall include the statements provided for in Section 1.02 of this Indenture.

*"Closing Date"* means the date on which the Notes are delivered by the District to the Owner.

*"Costs of Issuance"* means all items of expense directly or indirectly payable by or reimbursable to the District and related to the authorization, execution, sale and delivery of the Notes, including but not limited to advertising and printing costs, costs of preparation and reproduction of documents, filing fees, initial fees and charges of the Trustee, legal fees and charges and any other cost, charge or fee in connection with the original delivery of Notes.

*"Debt Service Fund"* means the fund by that name established pursuant to Section 5.01 of this Indenture.

*"District"* means Mendocino Coast Health Care District, a local health care district duly organized and existing under the Law.

*"Event of Default"* means any of the events specified in Section 8.01 of this Indenture.

*"Fiscal Year"* means the period beginning on July 1 of each year and ending on the next succeeding June 30, or any other twelve-month period hereafter selected and designated as the official fiscal year period of the District.

"*Indenture*" means this Indenture, as originally executed or as it may from time to time be supplemented, modified or amended by any Supplemental Indenture.

"*Interest Account*" means the account by that name in the Debt Service Fund established pursuant to Section 5.02 of this Indenture.

"*Interest Payment Date*" means June 1 and December 1 in each year, commencing June 1, 2013, or, if such day is not a Business Day, on the next succeeding Business Day, so long as any of the Notes remain Outstanding hereunder.

"*Law*" means The Local Health Care District Law, constituting Division 23 of the California Health and Safety Code, as now in effect and as it may from time to time hereafter be amended or supplemented.

"*Moody's*" means Moody's Rating Service, its successors and their assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the District

"*Notes*" means the $2,500,000 Mendocino Coast Health Care District 2011 HIT/EHR Taxable Promissory Notes, issued hereunder.

"*Note Year*" means the period of twelve consecutive months ending on December 1 in any year in which Notes are Outstanding.

"*Opinion of Counsel*" means a written opinion of counsel (who may be counsel for the District) selected by the District and reasonably acceptable to the Trustee. If and to the extent required by the provisions of Section 1.02 of this Indenture, each Opinion of Counsel shall include the statements provided for in Section 1.02 of this Indenture.

"*Optional Redemption Account*" means the account by that name in the Redemption Fund established pursuant to Section 5.06 of this Indenture.

"*Outstanding*," when used as of any particular time with reference to Notes, means all Notes theretofore, or thereupon being issued under this Indenture except Notes theretofore canceled by the Trustee or surrendered to the Trustee for cancellation.

"*Owner*," whenever used herein, means UHC of California, as purchaser of the Notes.

"*Person*" means a corporation, firm, association, partnership, trust, or other legal entity or group of entities, including a governmental entity or any agency or political subdivision thereof.

"*Principal Account*" means the account by that name in the Debt Service Fund established pursuant to Section 5.02 of this Indenture.

"*Principal Corporate Trust Office*" or "principal corporate trust office" means the principal corporate trust office of the Trustee, which as of the date of this Indenture is located at 700 South Flower Street, Suite 500, Los Angeles, CA 90017, Attention: Corporate Trust Department, or solely for purposes of payment, transfer, exchange or registration of Notes, such corporate trust agency office as may be designated by the Trustee, or for all other purposes, such other or additional offices as may be designated by the Trustee.

"*Redemption Fund*" means the fund by that name established pursuant to Section 5.05 of this Indenture.

"*Redemption Price*" means, with respect to any Note (or portion thereof) the principal amount of such Note (or portion) payable upon redemption thereof pursuant to the provisions of such Note and this Indenture

"*S&P*" means Standard & Poor's Ratings Services, A Division of The McGraw-Hill Companies, Inc., its successors and their assigns, or, if such corporation shall be dissolved or liquidated or shall no longer perform the functions of a securities rating agency, any other nationally recognized securities rating agency designated by the District.

"*State*" means the State of California.

"*Supplemental Indenture*" means any indenture hereafter duly authorized and entered into between the District and the Trustee supplementing, modifying or amending this Indenture, but only if and to the extent that such Supplemental Indenture is specifically authorized hereunder.

"*Trustee*" means The Bank of New York Mellon Trust Company, N.A., a national banking association organized and existing under the laws of the United States of America, or its successor, as Trustee as provided in Section 9.01 of this Indenture.

Section 1.02. <u>Content of Certificates and Opinions</u>. Every certificate or opinion provided for in this Indenture with respect to compliance with any provision hereof shall include (a) a statement that the person making or giving such certificate or opinion has read such provision and the definitions herein relating thereto; (b) a brief statement as to the nature and scope of the examination or investigation upon which the certificate or opinion is based; (c) a statement that, in the opinion of such person, he or she has made or caused to be made such examination or investigation as is necessary to enable him or her to express an informed opinion with respect to the subject matter referred to in the instrument to which his or her signature is affixed; and (d) a statement as to whether, in the opinion of such person, such provision has been complied with.

Section 1.03. <u>Interpretation</u>.

(a) Unless the context otherwise indicates, words expressed in the singular shall include the plural and vice versa and the use of the neuter, masculine, or feminine gender is for convenience only and shall be deemed to mean and include the neuter, masculine or feminine gender, as appropriate.

(b) Headings of articles and sections herein and the table of contents hereof are solely for convenience of reference, do not constitute a part hereof and shall not affect the meaning, construction or effect hereof.

(c) All references herein to "Articles," "Sections" and other subdivisions are to the corresponding Articles, Sections or subdivisions of this Indenture; the words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Indenture as a whole and not to any particular Article, Section or subdivision hereof.

# ARTICLE II

# THE NOTES

Section 2.01. <u>Authorization and Terms of Notes</u>. No Notes may be issued under this Indenture except in accordance with the provisions of this Article II.

(a) There shall be issued under and secured by this Indenture the Notes in the aggregate principal amount of $2,500,000 designated "Mendocino Coast Health Care District 2011 HIT/EHR taxable Promissory Notes" for the purpose of providing funds to finance the Project.

(b) The Notes shall be dated the Closing Date and shall bear interest at the rate of 3.75% per annum to maturity, payable on each Interest Payment Date. Interest on the Notes accrue from the Closing Date, and shall be calculated on the basis of a 360 day year composed of twelve 30 day months. The Notes shall be issuable only as one fully registered note without coupons in the total principal amount of $2,500,000.

(c) The Notes shall mature in installments on December 1 in each of the years as follows:

| Maturity Date (December 1) | Principal Amount |
|---|---|
| 2014 | $802,850 |
| 2015 | 832,957 |
| 2016 | 864,193 |

(d) The Notes are subject to prior redemption as set forth in Article IV hereof. The Notes shall be substantially in the form and tenor set forth in Exhibit A hereto with such appropriate variations, omissions and insertions as are permitted or required by this Indenture. Notwithstanding any other provision in this Indenture, the Owner shall not be required to surrender Notes which have been partially paid. The Trustee and the Owner shall record on their books any partial redemption or principal payment made on such Notes.

Section 2.02. <u>Form of Notes</u>. The Notes shall be substantially in the form set forth in Exhibit A, which is attached hereto and by this reference incorporated herein, with necessary or appropriate variations, omissions and insertions, as permitted or required by this Indenture.

Section 2.03. <u>Execution of Notes</u>. The Notes shall be executed in the name and on behalf of the District with the manual signature of the President of the Board, the Chief Executive Officer or the Chief Financial Officer and attested by the manual signature of the Secretary or an Assistant Secretary of the Board.

Section 2.04. <u>No Transfer</u>. The Notes are not subject to transfer.

Section 2.05. <u>No Exchange</u>. The Notes are not subject to exchange.

# ARTICLE III

## ISSUANCE OF NOTES; APPLICATION OF PROCEEDS

Section 3.01. <u>Issuance of Notes</u>. At any time after the execution and delivery of this Indenture, the District may sell and execute and deliver Notes in the aggregate principal amount of two million five hundred thousand dollars ($2,500,000).

Section 3.02. <u>Application of Proceeds of Notes</u>. The proceeds of the Notes have been remitted by the Purchaser directly to the District. The District agrees and covenants that the proceeds of the Notes will be held in a segregated fund or account and will be used solely to pay or reimburse costs of the Project and will be used for no other purpose. Upon completion of the Project, the District shall provide a copy of the final invoice to the Owner, and shall promptly apply any remaining proceeds of the Notes in excess of amounts applied to payment of the costs of the Project to prepayment of the outstanding principal balance of the Notes, which prepayment shall be applied to reduce principal installments in inverse order of maturity.

Section 3.03. <u>Costs of Issuance</u>. Costs of Issuance shall be paid by the Owner from its Small Issuance Grant Program upon the submission of invoices therefor

Section 3.04. <u>Validity of Notes</u>.

(a) The Board has reviewed all proceedings heretofore taken relative to the authorization of the Notes and has found, as a result of such review, and hereby finds and determines that all acts, conditions and things required by law to exist, happen or be performed precedent to and in the issuance of the Notes do exist, have happened and have been performed in due time, form and manner as required by law, and the Board is now authorized, pursuant to each and every requirement of the Law to issue the Notes in the form and manner provided in this Indenture and the Notes shall be entitled to the benefit, protection and security of the provisions of this Indenture.

(b) From and after the issuance of the Notes the findings and determinations of the Board respecting the Notes shall be conclusive evidence of the existence of the facts so found and determined in any action or proceeding in any court in which the validity of the Notes is at issue, and no bona fide purchaser of any of the Notes shall be required to see to the existence of any fact or to the performance of any condition or to the taking of any proceeding required prior to such issuance or to the application of the proceeds of sale of the Notes. The validity of the issuance of the Notes shall not be dependent on or affected in any way by (i) any proceedings taken by the District for the acquisition and construction of the Project or (ii) any contracts made by the District in connection therewith or (iii) the failure to complete the acquisition and implementation of the Project. The recital contained in the Notes that the same are issued pursuant to the Law and this Indenture shall be conclusive evidence of their validity and of the regularity of the issuance and all Notes shall be incontestable from and after their issuance. The Notes shall be deemed to be issued, within the meaning of this Indenture, whenever the definitive Notes (or any temporary Notes exchangeable therefor) have been delivered to the purchaser thereof and the proceeds of sale thereof received.

# ARTICLE IV

## REDEMPTION OF NOTES

Section 4.01. <u>Terms of Redemption</u>. The Notes are subject to redemption at the option of the District as a whole or in part on any date, in inverse order of maturity, from moneys deposited in the Special Redemption Account pursuant to Section 5.05 of this Indenture, at the principal amount thereof and interest accrued thereon to the date fixed for redemption, without premium. In order to create an incentive for the District to prepay the Notes, the District shall receive an incentive rebate of principal from the Owner for prepayment in whole prior to the maturity date of the Note, as follows:

| Prepayment Date | Rebate Amount |
|---|---|
| On or prior to 36 month anniversary of the Closing Date | 10% of original principal |
| On or prior to 42 month anniversary of Closing Date | 7.5% of original principal |
| On or prior to 48 month anniversary of Closing Date | 5% of original principal |

Section 4.02. <u>Notice of Redemption</u>. Notice of redemption shall be mailed by the Trustee, not less than ten (10) days prior to the redemption date, to the Owner. Each notice of redemption shall state the date of such notice, the Notes to be redeemed, the redemption date, the Redemption Price, the place or places of redemption (including the name and appropriate address or addresses of the Trustee). Each such notice shall also state that on said date there will become due and payable on each of said Notes the Redemption Price thereof or of said specified portion of the principal amount thereof in the case of a Note to be redeemed in part only, together with interest accrued thereon to the redemption date, and that from and after such redemption date interest thereon shall cease to accrue, and shall require that such Notes be then surrendered at the address or addresses of the Trustee specified in the redemption notice. Such redemption notices may be conditional.

Notice of redemption of Notes shall be given by the Trustee, at the expense of the District, for and on behalf of the District.

Section 4.03. <u>Partial Redemption of Notes</u>. Upon surrender of any Note redeemed in part only, the District shall execute and deliver to the Owner, at the expense of the District, a new Note equal in aggregate principal amount to the unredeemed portion of the Note surrendered.

Section 4.04. <u>Effect of Redemption</u>. Notice of redemption having been duly given as aforesaid, and moneys for payment of the Redemption Price of, together with interest accrued to the redemption date on, the Notes (or portions thereof) so called for redemption being held by the Trustee, on the redemption date designated in such notice, the Notes (or portions thereof) so called for redemption shall become due and payable at the Redemption Price specified in such notice and interest accrued thereon to the redemption date, interest on the Notes so called for redemption shall cease to accrue, said Notes (or portions thereof) shall cease to be entitled to any benefit or security under this Indenture, and the Owner shall have no rights in respect thereof except to receive payment of said Redemption Price and accrued interest.

All Notes redeemed pursuant to the provisions of this Article IV shall be canceled upon surrender thereof and delivered to or upon the Order of the District.

# ARTICLE V

## AVAILABLE MONEYS

Section 5.01. <u>Debt Service Fund</u>.

(a) On or before the twentieth (20th) day of each month and as long as any of the Notes remain Outstanding, the District shall pay to the Trustee, from Available Moneys, for deposit in the Debt Service Fund, commencing November 20, 2012, one-sixth (1/6) of the aggregate amount of interest becoming due and payable on the next ensuing Interest Payment Date on all Notes then Outstanding, until the balance in said account is equal to said aggregate amount of interest, and, commencing November 20, 2013, one-twelfth (1/12) of the aggregate amount of principal becoming due and payable on the Outstanding Notes, until the balance in said account is equal to said aggregate amount of such principal, all as is required by the Trustee to make the transfers and deposits required by Section 5.02 of this Indenture. Notwithstanding the foregoing, if five Business Days prior to any interest or principal payment date with respect to the Notes, the aggregate amount in the Debt Service Fund is for any reason insufficient or unavailable to make the required payments of principal (or Redemption Price) of or interest on the Notes then becoming due (whether by maturity, redemption or acceleration), the District shall forthwith transfer the amount of any such deficiency to the Trustee. Each transfer by the District to the Trustee hereunder shall be in lawful money of the United States of America and paid to the Trustee at its Principal Corporate Trust Office. All such moneys shall be promptly deposited by the Trustee upon receipt thereof in a special fund designated as the "Debt Service Fund" which the Trustee shall establish, maintain and hold in trust. All moneys deposited with the Trustee shall be held, disbursed, allocated and applied by the Trustee only as provided in this Indenture.

(b) If five days prior to an interest payment date or principal payment date the Trustee has not received moneys sufficient to make the transfers and deposits required in such month by Section 5.02 of this Indenture, the Trustee shall immediately notify the District of such insufficiency by telephone or facsimile delivery and confirm such notification by written notice.

Section 5.02. <u>Allocation of Available Moneys</u>. On or before the twenty-fifth (25th) day of each month preceding an Interest Payment Date or the date upon which principal becomes due and payable on the Outstanding Notes, the Trustee shall transfer from the Debt Service Fund and deposit into the following respective accounts (each of which the Trustee shall establish and maintain within the Debt Service Fund), the following amounts, in the following order of priority, the requirements of each such account (including the making up of any deficiencies in any such account resulting from lack of Available Moneys sufficient to make any earlier required deposit) at the time of deposit to be satisfied before any transfer is made to any account subsequent in priority in an amount equal to the aggregate amount then due:

*First*: to the Interest Account, the aggregate amount of interest becoming due and payable on the next ensuing Interest Payment Date on all Notes then Outstanding; and

*Second*: to the Principal Account, the aggregate amount of principal becoming due and payable on the Outstanding Notes on the next ensuing principal payment date; provided that from the date of delivery of the Notes until the first principal payment date (if less than twelve months), the amount transferred to the Principal Account shall be sufficient to pay the principal becoming due and payable on said principal payment date.

Any moneys remaining in the Debt Service Fund after the foregoing transfers shall be transferred to the District.

Section 5.03. <u>Application of Interest Account</u>. All amounts in the Interest Account shall be used and withdrawn by the Trustee solely for the purpose of paying interest on the Notes as it shall become due and payable (including accrued interest on any Notes purchased or redeemed prior to maturity pursuant to this Indenture).

Section 5.04. <u>Application of Principal Account</u>. All amounts in the Principal Account shall be used and withdrawn by the Trustee solely for the purposes of paying the principal of the Notes when due and payable.

Section 5.05. <u>Application of Redemption Fund</u>. The Trustee shall establish and maintain within the Redemption Fund (which the Trustee shall establish, maintain and hold in trust) a separate Optional Redemption Account and a separate Special Redemption Account. All amounts deposited in the Optional Redemption Account and in the Special Redemption Account shall be used and withdrawn by the Trustee solely for the purpose of redeeming Notes, in the manner and upon the terms and conditions specified in Article IV, at the next succeeding date of redemption for which notice has not been given and at the redemption prices then applicable to redemptions from the Optional Redemption Account and the Special Redemption Account, respectively.

Section 5.06. <u>No Investment of Moneys in Funds and Accounts</u>. Any moneys in any of the funds and accounts held by the Trustee and established pursuant to this Indenture shall be held in cash, uninvested.

Case: 13-01026   Doc# 1-4   Filed: 02/19/13   Entered: 02/19/13 16:49:06   Page 13 of 32

# ARTICLE VI

# REPRESENTATIONS AND WARRANTIES OF THE DISTRICT

Section 6.01. <u>Representations and Warranties of the District</u>. The District makes the following representations and warranties to the Trustee that as of the date of the execution of this Indenture:

(a) The District is a local health care district duly organized and existing under the laws of the State, has full legal right, power and authority to enter into this Indenture and to carry out and consummate all transactions contemplated by this Indenture, and by proper corporate action has duly authorized the execution and delivery of this Indenture.

(b) The officers of the District executing this Indenture are duly and properly in office and fully authorized to execute the same.

(c) This Indenture has been duly authorized, executed and delivered by the District, and constitutes the legal, valid and binding agreement of the District with the Trustee for the benefit of the Owner; except, in all cases, as may be limited by bankruptcy, insolvency, moratorium and other similar laws affecting creditors' rights generally and to the application of equitable principles if equitable remedies are sought.

(d) The execution and delivery of this Indenture, the consummation of the transactions herein contemplated and the fulfillment of or compliance with the terms and conditions hereof will not in any material respect conflict with or constitute a violation or breach of or default (with due notice or the passage of time or both) to the knowledge of the District, after reasonable inquiry and investigation, any applicable law or administrative rule or regulation, or any applicable court or administrative decree or order, or any indenture, trust agreement, mortgage, deed of trust, loan agreement, lease, contract or other agreement or instrument to which the District is a party or by which it or its properties are otherwise subject or bound, or result in the creation or imposition of any prohibited lien, charge or encumbrance of any nature whatsoever upon any of the property or assets of the District.

(e) No consent or approval of any trustee, holder of any indebtedness of the District or any other Person, and no consent, permission, authorization, order or license of, or filing or registration with, any governmental authority (other than approvals required to be obtained subsequent to the date hereof with respect to the Project) is necessary in connection with the execution and delivery of this Indenture, the consummation of any transaction herein contemplated, or the fulfillment of or compliance with the terms and conditions hereof, except as have been obtained or made and as are in full force and effect.

(f) There is no action, suit, proceeding, inquiry or investigation, before or by any court or federal, state, municipal or other governmental authority, pending, or to the knowledge of the District, after reasonable inquiry and investigation, threatened against or affecting the District or the assets, properties or operations of the District which, if determined adversely to the District or its interests, could have a material adverse effect upon the consummation of the transactions contemplated by or the fulfillment or compliance with the terms and conditions of or the validity or enforceability of this Indenture or upon the financial condition, assets, properties or operations of the District, and the District is not in default (and no event has occurred and is continuing which with the giving of notice or the passage of time or both would constitute a default) with respect to any order or decree of any court or any order, regulation or express demand of any federal, state, municipal or other governmental authority default might have consequences that would materially and adversely affect the consummation of the

Case: 13-01026   Doc# 1-4   Filed: 02/19/13   Entered: 02/19/13 16:49:06   Page 14 of 32

transactions contemplated by this Indenture or the financial condition, assets, properties or operations of the District or its properties. All tax returns (federal, state and local) required to be filed by or on behalf of the District have been filed, and all taxes shown thereon to be due, including interest and penalties, except such, if any, are being actively contested by the District in good faith, have been paid or adequate reserves have been made for the payment thereof, which reserves, if any, are reflected in the financial statements described in subsection (g) of this Section 6.01.

(g) The audited balance sheet of the District at June 30, 2010, and the related statements of unrestricted fund revenues and expenses, changes in fund balances and changes in financial position of the unrestricted fund for the year ended on such date fairly present the financial position of the District at June 30, 2010, and the results of operations for the year ended on such date, with such exceptions as may be disclosed in such certificate, and since June 30, 2010, there has been no material adverse change in the financial condition or results of operations of the District or otherwise, except as disclosed to the Owner.

(h) No information, exhibit or report furnished by the District in connection with the execution of this Indenture (including, without limitation, information pertaining to the District in the official statement relating to the Notes) contains any untrue statement of a material fact or omits to state a material fact required to be stated therein or necessary to make the statements therein, in light of the circumstances under which they were made, not misleading.

## ARTICLE VII

## PARTICULAR COVENANTS

Section 7.01. <u>Punctual Payment</u>. The District shall punctually pay or cause to be paid the principal or Redemption Price and interest to become due in respect of all the Notes, in strict conformity with the terms of the Notes and of this Indenture, according to the true intent and meaning thereof, but only out of Available Moneys and other assets pledged for such payment as provided in this Indenture.

Section 7.02. <u>Extension of Payment of Notes</u>. The District shall not directly or indirectly extend or assent to the extension of the maturity of any of the Notes or the time of payment of any or claims for interest by the purchase or funding of such Notes or claims for interest or by any other arrangement and in case the maturity of any of the Notes or the time of payment of any such claims for interest shall be extended, such Notes or claims for interest shall not be entitled, in case of any default hereunder, to the benefits of this Indenture, except subject to the prior payment in full of the principal all of the Notes then Outstanding and of all claims for interest thereon which shall not have been so extended. Nothing in this Section 7.02 shall be deemed to limit the right of the District to issue bonds or notes for the purpose of refunding any Outstanding Notes, and such issuance shall not be deemed to constitute an extension of maturity of Notes.

Section 7.03. <u>Accounting Records, Financial Statements and Reporting Requirements</u>.

(a) The Trustee shall at all times keep, or cause to be kept, proper books of record and account, prepared in accordance with the Trustee's accounting practices for books of record and account relating to similar trust accounts and in accordance with the customary standards of the corporate trust industry for such books of record and account, in which complete and accurate entries shall be made of all transactions relating to the proceeds of Notes and all funds and accounts established pursuant to this Indenture and held by the Trustee. Such books of record and account shall be available for inspection by the District and the Owner, or its agent or representative duly authorized in writing, at reasonable hours and under reasonable circumstances.

(b) The District shall maintain and furnish to the Owner by no later than one hundred twenty (120) days after the end of each fiscal year of the District a copy of the most recent audited financial statements of the District.

(c) The District agrees to fully participate in the Implementation Status Reporting to Tahoe Institute for Rural Health Research (TIRHR), or any replacement agency approved by the Owner, as such reporting requirements may be modified from time to time to better assess progress towards meaningful use.

(d) Not later than thirty (30) days after the end of each fiscal quarter of the District, the District shall provide the following information to the Owner, in such form as shall be prescribed by the Owner, which may be unaudited:

(i) Comparative Balance Sheet and Income Statement
(ii) Liquidity Ratios:
    (A) Days Cash on Hand
    (B) Current Ratio
    (C) Day in Accounts Receivable
(iii) Operating Ratios:
    (A) Operating Margin
    (B) Total Margin
    (C) Long-term Debt to Equity
(iv) Any extraordinary activity during the period reported.

All such ratios shall be calculated in accordance with the financial information provided to the Owner prior to the Closing Date.

(e) The District authorizes and consents to the transfer of information directly from TIRHR to the Owner, as may be reasonably requested by the Owner from time to time. The District shall provide such other information to the Owner as the Owner may reasonably request from time to time.

(f) All reporting required to be made by the District to the Owner shall be sent by electronic or first class mail to:

Steven P. Henry, CFA
Director, Treasury Investment Management
UnitedHealth Group
5995 Plaza Drive,
Mail Code CA112-0267
Cypress, CA 90630
steven_p_henry@uhc.com

Section 7.04. <u>Waiver of Laws</u>. The District shall not at any time insist upon or plead in any manner whatsoever, or claim or take the benefit or advantage of, any stay or extension law now or at any time hereafter in force that may affect the covenants and agreements contained in this Indenture or in the Notes, and all benefit or advantage of any such law or laws is hereby expressly waived by the District to the extent permitted by law.

# ARTICLE VIII

## EVENTS OF DEFAULT AND REMEDIES OF NOTEOWNERS

Section 8.01. <u>Events of Default</u>. The following events shall be Events of Default:

(a) default in the due and punctual payment of the principal or Redemption Price of any Note when and as the same shall become due and payable, whether at maturity as therein expressed, by proceedings for redemption, by declaration or otherwise;

(b) default in the due and punctual payment of any installment of interest on any Note when and as such interest installment shall become due and payable;

(c) default in the due and punctual payment of the amounts required by Section 5.01 of this Indenture in the amounts and at the times provided therefor;

(d) if any representation or warranty made by the District herein or in any document, instrument or certificate furnished to the Trustee or to the initial purchaser(s) of the Notes in connection with the execution and delivery of the Notes shall at any time prove to have been incorrect in any material respect as of the time made;

(f) if the District shall fail to observe or perform any covenant, condition, agreement or provision in this Indenture on its part to be observed or performed, other than as referred to in subsection (a), (b), (c) or (d) of this Section 8.01, or shall breach any warranty by the District herein contained, for a period of sixty (60) days after written notice, specifying such failure or breach and requesting that it be remedied, has been given to the District by the Trustee; except that, if such failure or breach can be remedied but not within such sixty (60) day period and if the District has taken all action reasonably possible to remedy such failure or breach within such sixty (60) day period, such failure or breach shall not become an Event of Default for so long as the District shall diligently proceed to remedy same in accordance with and subject to any directions or limitations of time established by the Trustee which period shall not be longer than one hundred eighty (180) days from the date of such written notice of such failure or breach;

(g) if a final judgment for the payment of money in excess of one million dollars ($1,000,000) (whether or not covered by insurance) shall be rendered against the District and the same shall remain undischarged for a period of one hundred twenty (120) days during which the execution of such judgment shall not be effectively stayed;

(h) if the District files a petition in voluntary bankruptcy, for the composition of its affairs or for its corporate reorganization under any state or federal bankruptcy or insolvency law, or makes an assignment for the benefit of creditors, or admits in writing to its insolvency or inability to pay debts as they mature, or consents in writing to the appointment of a trustee or receiver for itself or for the whole or any substantial part of the Project;

(i) if a court of competent jurisdiction shall enter an order, judgment or decree declaring the District an insolvent or adjudging it bankrupt, or appointing a trustee or receiver of the District or of the whole or any substantial part of the Project, or approving a petition filed against the District seeking reorganization of the District under any applicable law or statute of the United States of America or any state thereof, and such order, judgment or decree shall not be vacated or set aside or stayed within sixty (60) days from the date of the entry thereof; or

(j) if, under the provisions of any other law for the relief or aid of debtors, any court of competent jurisdiction shall assume custody or control of the District or of the whole or any substantial part of the Project, and such custody or control shall not be terminated within sixty (60) days from the date of assumption of such custody or control.

Section 8.02. *Acceleration of Maturities*. If an Event of Default shall occur, then, and in each and every such case during the continuance of such Event of Default, the Trustee, at the written direction of the Owner, or the Owner shall be entitled, upon notice in writing to the District, to declare the principal of all of the Notes then Outstanding, and the interest accrued thereon, to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, anything in this Indenture or in the Notes contained to the contrary notwithstanding.

Any such declaration, however, is subject to the condition that if, at any time after such declaration and before any judgment or decree for the payment of the moneys due shall have been obtained or entered, the District shall deposit with the Trustee a sum sufficient to pay all the principal or Redemption Price of and installments of interest on the Notes payment of which is overdue, with interest on such overdue principal at the rate borne by the respective Notes, and the reasonable charges and expenses of Trustee, and any and all other defaults known to the Trustee (other than in the payment of principal of and interest on the Notes due and payable solely by reason of such declaration) shall have been made good or cured to the satisfaction of the Trustee or provision deemed by the Trustee to be adequate shall have been made therefor, then, and in every such case, the Owner, by written notice to the District and the Trustee, or the Trustee if such declaration was made by the Trustee, may, on behalf of the Owner, rescind and annul such declaration and its consequences and waive such default; but no such rescission and annulment shall extend to or shall affect any subsequent default, or shall impair or exhaust any right or power consequent thereon.

Section 8.03. *Application of Available Moneys and Other Funds After Default*. If an Event of Default shall occur and be continuing, all Available Moneys and any other funds then held or thereafter received by the Trustee under any of the provisions of this Indenture (subject to Section 5.01 of this Indenture) shall be applied by the Trustee as follows and in the following order:

(a) To the payment of any expenses necessary in the opinion of the Trustee to protect the interests of the Owner and payment of reasonable fees and expenses of the Trustee (including reasonable fees and disbursements of its counsel and accountants) incurred in and about the performance of its powers and duties under this Indenture;

(b) To the payment of the principal or Redemption Price of and interest then due on the Notes (upon presentation of the Notes to be paid, and stamping thereon of the payment if only partially paid, or surrender thereof if fully paid) subject to the provisions of this Indenture, as follows:

(i) Unless the principal of all of the Notes shall have become or have been declared due and payable,

*First*: To the payment to the persons entitled thereto of all installments of interest then due in the order of the maturity of such installments, and, if the amount available shall not be sufficient to pay in full any installment or installments maturing on the same date, then to the payment thereof ratably, according to the amounts due thereon, to the persons entitled thereto, without any discrimination or preference; and

*Second*: To the payment to the persons entitled thereto of the unpaid principal or Redemption Price of any Notes which shall have become due, whether at maturity or by call for redemption, in the order of their due dates, with interest on the overdue principal at the rate borne by the respective Notes, and, if the amount available shall not be sufficient to pay in full all the due on any date, together with such interest, then to the payment thereof ratably, according to the amounts of principal or Redemption Price due on such date to the persons entitled thereto, without any discrimination or preference.

(ii) If the principal of all of the Notes shall have become or have been declared due and payable, to the payment of the principal and interest then due and unpaid upon the Notes, with interest on the overdue principal at the rate borne by the respective Notes, and, if the amount available shall not be sufficient to pay in full the whole amount so due and unpaid, then to the payment thereof ratably, without preference or priority of principal over interest, or of interest over principal, or of any installment of interest over any other installment of interest, or of any Note over any other Note, according to the amounts due respectively for principal and interest, to the persons entitled thereto without any discrimination or preference.

Section 8.04. <u>Trustee to Represent Owner</u>. The Trustee is hereby irrevocably appointed (and the successive respective Owner, by taking and holding the same, shall be conclusively deemed to have so appointed the Trustee) as trustee and true and lawful attorney-in-fact of the Owner for the purpose of exercising and prosecuting on their behalf such rights and remedies as may be available to the Owner under the provisions of the Notes, this Indenture, the Law, and applicable provisions of any other law. Upon the occurrence and continuance of an Event of Default or other occasion giving rise to a right in the Trustee to represent the Owner, the Trustee, upon the written request of the Owner, and upon being indemnified to its satisfaction therefor, shall, proceed to protect or enforce its rights or the rights of the Owner by such appropriate action, suit, mandamus or other proceedings as it shall deem most effectual to protect and enforce any such right, at law or in equity, either for the specific performance of any covenant or agreement contained herein, or in aid of the execution of any power herein granted, or for the enforcement of any other appropriate legal or equitable right or remedy vested in the Trustee or in the Owner under this Indenture, the Law or any other law; and upon instituting such proceeding, the Trustee shall be entitled, as a matter of right, to the appointment of a receiver of the Available Moneys and other assets pledged under this Indenture, pending such proceedings. All rights of action under this Indenture or the Notes or otherwise may be prosecuted and enforced by the Trustee without the possession of any of the Notes or the production thereof in any proceeding relating there to, and any suit, action or proceeding instituted by the Trustee shall be brought in the name of the Trustee for the benefit and protection of the Owner, subject to the provisions of this Indenture. Nothing herein shall be deemed to authorize the Trustee to authorize or consent to or accept or adopt on behalf of the Owner any plan of reorganization, arrangement, adjustment, or composition affecting the Notes or the rights of the Owner thereof, or to authorize the Trustee to vote in respect of the claim of the Owner in any such proceeding without the approval of the Owner.

Section 8.05. <u>Owner's Direction of Proceedings</u>. Anything in this Indenture to the contrary notwithstanding, the Owner shall have the right, by an instrument or concurrent instruments in writing executed and delivered to the Trustee, to direct the method of conducting all remedial proceedings taken by the Trustee hereunder, provided that such direction shall not (a) be otherwise than in accordance with law and the provisions of this Indenture or (b) subject the Trustee to personal liability.

Section 8.06. <u>Limitation on Owner's Right to Sue</u>. The Owner shall have no right to institute any suit, action or proceeding at law or in equity, for the protection or enforcement of

any right or remedy under this Indenture, the Law or any other applicable law with respect to such Note, unless (a) the Owner shall have given to the Trustee written notice of the occurrence of an Event of Default; (b) the Owner shall have made written request upon the Trustee to exercise the powers hereinbefore granted or to institute such suit, action or proceeding in its own name; (c) the Owner shall have tendered to the Trustee reasonable indemnity against the costs, expenses and liabilities to be incurred in compliance with such request; and (d) the Trustee shall have refused or omitted to comply with such request for a period of sixty (60) days after such written request shall have been received by, and said tender of indemnity shall have been made to, the Trustee.

Section 8.07. <u>Absolute Obligation of District</u>. Nothing in Section 8.06 of this Indenture or in any other provision of this Indenture, or in the Notes, contained shall affect or impair the obligation of the District, which is absolute and unconditional to pay the principal or Redemption Price of and interest on the Notes to the Owner at their respective dates of maturity, or upon call for redemption, as herein provided, but only out of the Available Moneys and other assets herein pledged therefor, or affect or impair the right of the Owner, which is also absolute and unconditional, to enforce such payment by virtue of the contract embodied in the Notes.

Section 8.08. <u>Termination of Proceedings</u>. In case any proceedings taken by the Trustee or the Owner on account of any Event of Default shall have been discontinued or abandoned for any reason or shall have been determined adversely to the Trustee or the Owner, then in every such case the District, the Trustee and the Owner, subject to any determination in such proceedings, shall be restored to their former positions and rights hereunder, severally and respectively, and all rights, remedies, powers and duties of the District, the Trustee and the Owner shall continue as though no such proceedings had been taken.

Section 8.09. <u>Remedies Not Exclusive</u>. No remedy herein conferred upon or reserved to the Trustee or to the Owner is intended to be exclusive of any other remedy or remedies, and each and every such remedy, to the extent permitted by law, shall be cumulative and in addition to any other remedy given hereunder or now or hereafter existing at law or in equity or otherwise.

Section 8.10. <u>No Waiver of Default</u>. No delay or omission of the Trustee or of the Owner to exercise any right or power arising upon the occurrence of any default shall impair any such right or power or shall be construed to be a waiver of any such default or an acquiescence therein; and every power and remedy given by this Indenture to the Trustee or to the Owner may be exercised from time to time and as often as may be deemed expedient.

Section 8.11 Exercise of <u>Remedies</u>. Upon the occurrence of an Event of Default hereunder, the Trustee, at the written direction of the Owner and upon being indemnified to its satisfaction, or the Owner, may, either at law or in equity, by suit, action or other proceedings, protect and enforce the rights of the Owner hereunder, or enforce or compel the performance of any and all covenants and duties of the District hereunder.

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 21 of 32

# ARTICLE IX

# THE TRUSTEE

**Section 9.01.** Duties, Immunities and Liabilities of Trustee.

(a) The Trustee shall, prior to an Event of Default, and after the curing of all Events of Default which may have occurred, perform such duties and only such duties as are specifically set forth in this Indenture. The Trustee shall, during the existence of any Event of Default (which has not been cured), exercise such of the rights and powers vested in it by this Indenture, and use the same degree of care and skill in their exercise, as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.

(b) The District may remove the Trustee at any time unless an Event of Default shall have occurred and then be continuing, and shall remove the Trustee if at any time requested to do so by an instrument or concurrent instruments in writing signed by the Owner (or its attorneys duly authorized in writing) or if at any time the Trustee shall cease to be eligible in accordance with subsection (e) of this Section 9.01, or shall become incapable of acting, or shall be adjudged a bankrupt or insolvent or a receiver of the Trustee or its property shall be appointed, or any public officer shall take control or charge of the Trustee or of its property or affairs for the purpose of rehabilitation, conservation or liquidation, in each case by giving written notice of such removal to the Trustee, and thereupon shall a appoint a successor Trustee by an instrument in writing.

(c) The Trustee may at any time resign by giving written notice of such resignation to the District and by giving the Owner notice of such resignation by mail at the addresses shown on the registration books maintained by the Trustee. Upon receiving such notice of resignation, the District shall promptly appoint a successor Trustee by an instrument in writing.

(d) Any removal or resignation of the Trustee and appointment of a successor Trustee shall become effective upon acceptance of appointment by the successor Trustee. If no successor Trustee shall have been appointed and have accepted appointment within forty-five (45) days of giving notice of removal or notice of resignation as aforesaid, the retiring Trustee or the Owner may petition any court of competent jurisdiction for the appointment of a successor Trustee, and such Court may thereupon, after such notice (if any) as it may deem proper, (a) order the District to appoint a successor Trustee, or (b) appoint such successor Trustee. Any successor Trustee appointed under this Indenture, shall signify its acceptance of such appointment by executing and delivering to the District and to its predecessor Trustee a written acceptance thereof, and thereupon such successor Trustee, without any further act, deed or conveyance, shall become vested with all the moneys, estates, properties, rights, powers, trusts, duties and obligations of such predecessor Trustee, with like effect as if originally named Trustee herein; but, nevertheless at the Request of the District or the request of the successor Trustee, such predecessor Trustee shall execute and deliver any and all instruments of conveyance or further assurance and do such other things as may reasonably be required for more fully and certainly vesting in and confirming to such successor Trustee all the right, title and interest of such predecessor Trustee in and to any property held by it under this Indenture and shall pay over, transfer, assign and deliver to the successor Trustee any money or other property subject to the trusts and conditions herein set forth. Upon request of the successor Trustee, the District shall execute and deliver any and all instruments as may be reasonably required for more fully and certainly vesting in and confirming to such successor Trustee all such moneys, estates, properties, rights, powers, trusts, duties and obligations. Upon acceptance of appointment by a successor Trustee as provided in this subsection, the District shall give notice of the succession of such Trustee to the trusts hereunder by mail to the Owner. If the District fails to mail such

-18-

notice within fifteen (15) days after acceptance of appointment by the successor Trustee, the successor Trustee shall cause such notice to be mailed at the expense of the District.

(e) Any Trustee appointed under the provisions of this Section 9.01 in succession to the Trustee shall be a trust company or bank having the powers of a trust company having a corporate trust office in the State, having a combined capital and surplus (or the parent holding company of which has a combined capital and surplus) of at least fifty million dollars ($50,000,000), and subject to supervision or examination by federal or state authority. If such bank or trust company publishes a report of condition at least annually, pursuant to law or to the requirements of any supervising or examining authority above referred to, then for the purpose of this subsection the combined capital and surplus of such bank or trust (or holding) company shall be deemed to be its combined capital and surplus as set forth in its most recent report of condition so published. In case at any time the Trustee shall cease to be eligible in accordance with the provisions of this subsection (e), the Trustee shall resign immediately in the manner and with the effect specified in this Section 9.01.

Section 9.02. Merger or Consolidation. Any company into which the Trustee may be merged or converted or with which it may be consolidated or any company resulting from any merger, conversion or consolidation to which it shall be a party or any company to which the Trustee may sell or transfer all or substantially all of its corporate trust business, provided such company shall be eligible under subsection (e) of Section 9.01 of this Indenture, shall be the successor to such Trustee without the execution or filing of any paper or any further act, anything herein to the contrary notwithstanding.

Section 9.03. Liability of Trustee.

(a) The recitals of facts herein and in the Notes contained shall be taken as statements of the District, and the Trustee assumes no responsibility for the correctness of the same, and makes no representations as to the validity or sufficiency of this Indenture or of the Notes, or shall incur any responsibility in respect thereof, other than in connection with the duties or obligations herein or in the Notes assigned to or imposed upon it. The Trustee shall not be liable in connection with the performance of its duties hereunder, except for its own negligence or willful default. The Trustee may become the owner of Notes with the same rights it would have if it were not the Trustee, and, to the extent permitted by law, may act as depository for and permit any of its officers or directors to act as a member of, or in any other capacity with respect to, any committee formed to protect the rights of the Owner, whether or not such committee shall represent the Owner. The Trustee shall not be deemed to have knowledge of any Event of Default unless and until an officer at the Principal Corporate Trust Office responsible for the administration of its duties hereunder shall have actual knowledge thereof or the Trustee shall have received written notice thereof at the Principal Corporate Trust Office. The Trustee shall not be bound to inquire as to the performance or observance of any of the terms, conditions, covenants or agreements herein or of any of the documents executed in connection with the Notes, or as to the existence of any default or Event of Default thereunder. The Trustee shall not be responsible for the validity or effectiveness of any collateral given or held by it. As used herein, the term "actual knowledge" means the actual fact or statement of knowing, without any duty to make any investigation with regard thereto.

(b) The Trustee shall not be considered in breach of or in default in its obligations hereunder or progress in respect thereto in the event of enforced delay ("unavoidable delay") in the performance of such obligations due to unforeseeable causes beyond its control and without its fault or negligence, including, but not limited to, acts of god or of the public enemy or terrorists, acts of a government, acts of the other party, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, earthquakes, explosion, mob violence, riot, inability to procure or general sabotage or rationing of labor, equipment, facilities, sources of energy,

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 23 of 32

material or supplies in the open market, litigation or arbitration involving a party or others relating to zoning or other governmental action or inaction pertaining to the Project, malicious mischief, condemnation, and unusually severe weather or delays of suppliers or subcontractors due to such causes or any similar event and/or occurrences beyond the control of the Trustee.

(c) No provision of this Indenture shall require the Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder, or in the exercise of its rights or powers. The Trustee shall be under no obligation to exercise any of the rights or powers vested in it hereby at the request, order or direction of the Owner unless the Owner shall have offered to the Trustee security or indemnity satisfactory to it against the costs, expenses and liabilities that may be incurred therein or thereby.

(d) The Trustee shall not be liable with respect to any action taken or omitted to be taken by it in good faith in accordance with the direction of the Owner, relating to the time, method and place of conducting any proceeding for any remedy available to the Trustee, or exercising any trust or power conferred upon the Trustee hereunder.

(e) The Trustee shall not be accountable for the use or application by the District of any of the Notes or the proceeds thereof or for the use or application of any money paid over by the Trustee in accordance with the provisions of this Indenture or for the use and application of money received by any paying agent. The permissive right of the Trustee to do things enumerated in this Indenture shall not be construed as a duty and the Trustee shall not be answerable for other than its negligence or willful default. The Trustee shall not be required to give any bond or surety in respect of the execution of the said trusts and powers or otherwise in respect of the premises. The Trustee may execute any of the trusts or powers hereunder or perform any duties hereunder either directly or by or through agents, attorneys, custodians or nominees appointed with due care, and shall not be responsible for any willful misconduct or negligence on the part of any agent, attorney, custodian or nominee so appointed. The Trustee shall have no responsibility or liability with respect to any information, statements or recitals in any offering memorandum or other disclosure material prepared or distributed with respect to the issuance of these Notes.

(f) The Trustee shall not be bound to make any investigation into the facts or matters stated in any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, entitlement order, approval or other paper or document.

Section 9.04. <u>Right of Trustee to Rely on Documents</u>. The Trustee shall be protected in acting upon any notice, resolution, request, consent, requisition, order, certificate, report, opinion, note, statement, facsimile transmission, electronic mail or other paper or document believed by it to be genuine and to have been signed or presented by the proper party or parties. Before the Trustee acts or refrains from acting, the Trustee may consult with counsel, who may be counsel of or to the District, with regard to legal questions, and the opinion of such counsel shall be full and complete authorization and protection in respect of any action taken or suffered by it hereunder in good faith and in accord therewith.

Whenever in the administration of the trusts imposed upon it by this Indenture the Trustee shall deem it necessary or desirable that a matter be proved or established prior to taking or suffering any action hereunder, such matter (unless other evidence in respect thereof be herein specifically prescribed) may be deemed to be conclusively proved and established by a Certificate of the District, and such Certificate shall be full warrant to the Trustee for any action taken or suffered in good faith under the provisions of this Indenture in reliance upon such Certificate, but in its discretion the Trustee may, in lieu thereof, accept other evidence of such matter or may require such additional evidence as to it may seem reasonable.

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 24 of 32

The Trustee agrees to accept and act upon instructions or directions pursuant to this Indenture sent by unsecured e-mail, facsimile transmission or other similar unsecured electronic methods, provided, however, that, the Trustee shall have received an incumbency certificate listing persons designated to give such instructions or directions and containing specimen signatures of such designated persons, which such incumbency certificate shall be amended and replaced whenever a person is to be added or deleted from the listing. If the District elects to give the Trustee e-mail or facsimile instructions (or instructions by a similar electronic method) and the Trustee in its discretion elects to act upon such instructions, the Trustee's understanding of such instructions shall be deemed controlling. The Trustee shall not be liable for any losses, costs or expenses arising directly or indirectly from the Trustee's reliance upon and compliance with such instructions notwithstanding such instructions conflict or are inconsistent with a subsequent written instruction. The District agrees to assume all risks arising out of the use of such electronic methods to submit instructions and directions to the Trustee, including without limitation the risk of the Trustee acting on unauthorized instructions, and the risk of interception and misuse by third parties.

Section 9.05. <u>Preservation and Inspection of Documents</u>. All documents received by the Trustee under the provisions of this Indenture shall be retained in its possession and shall be subject at all reasonable times to the inspection of the District and the Owner, and their agents and representatives duly authorize in writing, at reasonable hours and under reasonable conditions.

Section 9.06. <u>Compensation of Trustee</u>. The District covenants to pay to the Trustee from time to time, but only out of Available Moneys, and the Trustee shall be entitled to, reasonable compensation for all services rendered by it in the exercise and performance of any of the powers and duties hereunder of the Trustee, and the District will pay or reimburse the Trustee upon its request, but only out of Available Moneys, for all expenses, disbursements and advances incurred or made by the Trustee in accordance with any of the provisions of this Indenture (including the reasonable compensation and the expenses and disbursements of its counsel and of all persons but regularly in its employ) except any such expense, disbursement or advance as may arise from its negligence or willful default.

Upon an Event of Default, and only upon an Event of Default, the Trustee shall have a first lien with right of payment prior to payment on account of principal of and premium, if any, and interest on any Note, upon the trust estate for the foregoing fees, charges and expenses incurred by it. When the Trustee incurs expenses or renders services after the occurrence of an Event of Default, such expenses and the compensation for such services are intended to constitute expenses of administration under any federal or state bankruptcy, insolvency, arrangement, moratorium, reorganization or other debtor relief law.

Section 9.07. <u>Indemnification</u>. The District covenants to indemnify the Trustee and its officers, directors, agents and employees and to hold it and them harmless to the extent permitted by law against any loss, liability, expenses or advance, including fees and expenses of counsel and other experts, incurred or made without negligence or willful default on the part of the Trustee, in the exercise and performance of any of the powers and duties hereunder by the Trustee, including the costs and expenses of defending itself against or investigating any claim of liability arising under this Indenture. The provisions of this Section 9.07 shall survive the removal or resignation of the Trustee or the termination of this Indenture.

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 25 of 32

# ARTICLE X

## MODIFICATION OR AMENDMENT OF THIS INDENTURE

Section 10.01. <u>Amendments Permitted</u>.

(a) This Indenture and the rights and obligations of the District, the Owner and the Trustee may be modified or amended from time to time and at any time by a Supplemental Indenture, which the District and the Trustee may enter into with the written consent of the Owner filed with the Trustee.

(b) The Trustee may in its discretion, but shall not be obligated to, enter into any such Supplemental Indenture which materially affects the Trustee's own rights, duties or immunities under this Indenture or otherwise.

(c) Prior to entering into any Supplemental Indenture, the Trustee may require the District to file with it an opinion of counsel of recognized standing in the field of law relating to municipal notes, to the effect that the execution and delivery of such Supplemental Indenture by the Trustee and the District is in compliance with the terms and conditions hereof.

Section 10.02. <u>Effect of Supplemental Indenture</u>. From and after the time any Supplemental Indenture becomes effective pursuant to this Article X, this Indenture shall be deemed to be modified and amended in accordance therewith, and the respective rights, duties and obligations under this Indenture of the District, the Trustee and the Owner shall thereafter be determined, exercised and enforced hereunder subject in all respects to such modification and amendment, ant all the terms and conditions of any such Supplemental Indenture shall be deemed to be part of the terms and conditions of this Indenture for any and all purposes.

Section 10.03. <u>Endorsement of Notes; Preparation of New Notes</u>. Notes delivered after any Supplemental Indenture becomes effective pursuant to this Article X may, and if the Trustee so determines shall, bear a notation by endorsement or otherwise in form approved by the District and the Trustee as to any modification or amendment provided for in such Supplemental Indenture, and, in that case, upon demand of the Owner at the time of such execution and presentation of his Note for the purpose at the Principal Corporate Trust Office or at such additional offices as the Trustee may select and designate for that purpose, a suitable notation shall be made on such Note. If the Supplemental Indenture shall so provide, new Notes so modified as to conform, in the opinion of the District and the Trustee, to any modification or amendment contain in such Supplemental Indenture, shall be prepared and executed by the District, and upon demand of the Owner shall be exchanged at the Principal Corporate Trust Office, without cost to the Owner, upon surrender for cancellation of such Notes.

Section 10.04. <u>Amendment of Particular Notes</u>. The provisions of this Article X shall not prevent the Owner from accepting any amendment as to the particular Notes held by him, provided that due notation thereof is made on such Notes.

Case: 13-01026    Doc# 1-4    Filed: 02/19/13    Entered: 02/19/13 16:49:06    Page 26 of 32

# ARTICLE XI

## DISCHARGE OF INDENTURE

Section 11.01. <u>Discharge of Indenture</u>. Notes may be paid by the District in any of the following ways; provided that the District also pays or causes to be paid any other sums payable hereunder by the District:

(a) by paying or causing to be paid the principal or Redemption Price of and interest on Notes Outstanding, as and when the same become due and payable; or

(b) by delivering to the Trustee, for cancellation by it, Notes Outstanding.

If the District shall pay all Notes Outstanding and shall also pay or cause to be paid all other sums payable hereunder by the District, then and in that case, and notwithstanding that any Notes shall not have been surrendered for payment, this Indenture and all covenants, agreements and other obligations of the District under this Indenture shall cease, terminate, become void and be completely discharged and satisfied. In such event, upon Request of the District, the Trustee shall cause an accounting for such period or periods as may be requested by the District to be prepared and filed with the District and shall execute and deliver to the District all such instruments as may be necessary or desirable to evidence such discharge and satisfaction, and the Trustee shall pay over, transfer, assign or deliver to the District all moneys or securities or other property held by it pursuant to this Indenture which are not required for the payment or redemption of Notes not theretofore surrendered for such payment or redemption.

-23-

# ARTICLE XII

## MISCELLANEOUS

Section 12.01. <u>Successor Is Deemed Included in All References to Predecessor</u>. Whenever in this Indenture either the District or the Trustee is named or referred to, such reference shall be deemed to include the successors or assigns thereof, and all the covenants and agreements in this Indenture contained by or on behalf of the District or the Trustee shall bind and inure to the benefit of the respective successors and assigns thereof whether so expressed or not.

Section 12.02. <u>Limitation of Rights to Parties and Owner</u>. Nothing in this Indenture or in the Notes expressed or implied is intended or shall be construed to give to any person other than the District, the Trustee and the Owner, any legal or equitable right, remedy or claim under or in respect of this Indenture or any covenant, condition or provision therein or herein contained; and all such covenants, conditions and provisions are and shall be held to be for the sole and exclusive benefit of the District, the Trustee and the Owner.

Section 12.03. <u>Waiver of Notice</u>. Whenever in this Indenture the giving of notice by mail or otherwise is required, the giving of such notice may be waived in writing by the person entitled to receive such notice and in any such case the giving or receipt of such notice shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

Section 12.04. <u>Destruction of Notes</u>. Whenever in this Indenture provision is made for the cancellation by the Trustee and the delivery to the District of any Notes, the Trustee may, in lieu of such cancellation and delivery, destroy such Notes, and deliver, upon the District's request, a certificate of such destruction to the District.

Section 12.05. <u>Severability of Invalid Provisions</u>. If any one or more of the provisions contained in this Indenture or in the Note shall for any reason be held to be invalid, illegal or unenforceable in any respect, then such provision or provisions shall be deemed severable from the remaining provisions contained in this Indenture and such invalidity, illegality or unenforceability shall not affect any other provisions of this Indenture, and this Indenture shall be construed as if such invalid or illegal or unenforceable provision had never been contained herein. The District hereby declares that it would have entered into this Indenture and each and every other Section, paragraph, sentence, clause or phrase hereof and authorized the issuance of the Notes pursuant thereto irrespective of the fact that any one or more Sections, paragraphs, sentences, clauses or phrases of this Indenture may be held illegal, invalid or unenforceable.

Section 12.06. <u>Notice to District and Trustee</u>. Any notice to or demand upon the Trustee may be served or presented, and such demand may be made, at the Principal Corporate Trust Office located at 700 South Flower Street, Suite 500, Los Angeles, CA 90017, Attention: Corporate Trust. Any notice to or demand upon the District shall be deemed to have been sufficiently given or served for all purposes by being deposited, postage prepaid, in a post office letter box, addressed, as the case may be, to the District at 700 River Drive, Fort Bragg, CA 95437], Attention: Chief Executive Officer (or such other address as may have been filed in writing by the District with the Trustee).

Section 12.07. <u>Evidence of Rights of Owner</u>. Any request, consent or other instrument required or permitted by this Indenture to be signed and executed by the Owner shall be signed or executed by the Owner in person or by an agent or agents duly appointed in writing. Proof of the execution of any such request, consent or other instrument or of a writing appointing any such agent, or of the holding by any person of Notes transferable by delivery, shall be sufficient

Case: 13-01026   Doc# 1-4   Filed: 02/19/13   Entered: 02/19/13 16:49:06   Page 28 of 32

for any purpose of this Indenture and shall be conclusive in favor of the Trustee and of the District if made in the manner provided in this Section 12.07.

The fact and date of the execution by any person of any such request, consent or other instrument or writing may be proved by the certificate of any notary public or other officer of any jurisdiction, authorized by the laws thereof to take acknowledgments of deeds, certifying that the person signing such request, consent or other instrument acknowledged to him the execution thereof, or by an affidavit of a witness of such execution duly sworn to before such notary public or other officer.

The ownership of Notes shall be proved by the note registration books held by the Trustee.

Section 12.08. <u>Disqualified Notes</u>. In determining whether the Owner of the requisite aggregate principal amount of Notes have concurred in any demand, request, direction, consent or waiver under this Indenture, Notes which are owned or held by or for the account of the District or the District, or by any other obligor on the Notes, or by any person directly or indirectly controlling or controlled by, or under direct or indirect common control with the District or the District or any other obligor on the Notes, shall be disregarded and deemed not to be Outstanding for the purpose of any such determination; except that in determining whether the Trustee shall be protected in relying upon any such demand, request, direction, consent or waiver of an Owner, only Notes which the Trustee actually knows to be so owned or held shall be disregarded unless all Notes are so owned or held, in which case such Notes shall be considered Outstanding for the purpose of such determination. Notes so owned which have been pledged in good faith may be regarded as Outstanding for the purposes of this Section 12.08 if the pledgee shall establish to the satisfaction of the Trustee the pledgee's right to vote such Notes and that the pledgee is not a person directly or indirectly controlling or controlled by, or under direct or indirect common control with, the District or the District or any other obligor on the Notes. In case of a dispute as to such right, any decision by the Trustee taken upon the advice of counsel shall be full protection to the Trustee.

Section 12.09. <u>Money Held for Particular Notes</u>. The money held by the Trustee for the payment of the interest, principal or Redemption Price due on any date with respect to particular Notes (or portions of Notes in the case of registered Notes redeemed in part only) shall, on and after such date and pending such payment, be set aside on its books and held in trust by it for the Owner, but without any liability for the interest thereon.

Section 12.10. <u>Funds and Accounts</u>. Any fund required by this Indenture to be established and maintained by the Trustee may be established and maintained in the accounting records of the Trustee, either as a fund or an account, and may, for the purposes of such records, any audits thereof and any reports or statements with respect thereto, be treated either as a fund or as an account; but all such records with respect to all such funds shall at all times be maintained in accordance with customary standards of the corporate trust industry, to the extent practicable, and with due regard for the protection of the security of the Notes and the rights of the Owner.

Section 12.11. <u>Article and Section Headings and References</u>. The headings or titles of the several Articles and Sections hereof, and any table of contents appended to copies hereof, shall be solely for convenience of reference and shall not affect the meaning, construction or effect of this Indenture.

All references herein to "Articles," "Sections" and other subdivisions are to the corresponding Articles, Sections or subdivisions of a Indenture; the words "herein," "hereof," "hereby," "hereunder" and other words of similar import refer to this Indenture as a whole and

Case: 13-01026   Doc# 1-4   Filed: 02/19/13   Entered: 02/19/13 16:49:06   Page 29 of 32

25

not to any particular Article, Section or subdivision hereof; and words of the masculine gender shall mean and include words of the feminine and neuter genders.

Section 12.12. <u>Waiver of Personal Liability</u>. No Board member, officer, agent or employee of the District shall be individually or personally liable for the payment of principal or Redemption Price of or interest on the Notes or be subject to any personal liability or accountability by reason of the issuance thereof; but nothing herein contained shall relieve any such Board member, officer, agent or employee from the performance of any official duty provided by law or by this Indenture.

Section 12.13. <u>Execution in Several Counterparts</u>. This Indenture may be executed in any number of counterparts and each of counterparts shall for all purposes be deemed to be an original; and all such counterparts or as many of them as the District and the Trustee shall preserve undestroyed, shall together constitute but one and the same instrument.

Section 12.14. <u>Governing Law</u>. This Indenture shall be construed in accordance with and governed by the Constitution and laws of the State.

Case: 13-01026   Doc# 1-4   Filed: 02/19/13   Entered: 02/19/13 16:49:06   Page 30 of 32

IN WITNESS WHEREOF, MENDOCINO COAST HEALTH CARE District has caused this Indenture to be signed in its name by its Chief Executive Officer and it Chief Financial Officer and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., in token of its acceptance of the trusts created hereunder, has caused this Indenture to be signed in its name by one of its authorized officers, all as of the day and year first above written.

MENDOCINO COAST HEALTH CARE
DISTRICT

By _____
        Raymond T. Hino,
        *Chief Executive Officer*

By _____
        Wayne C. Allen,
        *Chief Financial Officer*

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.

By _____
        Agnes Obando,
        *Authorized Signatory*

IN WITNESS WHEREOF, MENDOCINO COAST HEALTH CARE District has caused this Indenture to be signed in its name by its Chief Executive Officer and it Chief Financial Officer and THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A., in token of its acceptance of the trusts created hereunder, has caused this Indenture to be signed in its name by one of its authorized officers, all as of the day and year first above written.

MENDOCINO COAST HEALTH CARE
DISTRICT


By _____
       Raymond T. Hino,
       *Chief Executive Officer*


By _____
       Wayne C. Allen,
       *Chief Financial Officer*

THE BANK OF NEW YORK MELLON TRUST
COMPANY, N.A.

By _____
       Agnes Obando,
       *Authorized Signatory*