1  **CHAPMAN AND CUTLER LLP**
   James E. Spiotto (*admitted pro hac vice*)
2  spiotto@chapman.com
   Ann E. Acker (*admitted pro hac vice*)
3  acker@chapman.com
   Laura E. Appleby (*admitted pro hac vice*)
4  appleby@chapman.com
   111 West Monroe Street
5  Chicago, Illinois 60603
   Telephone:     (312) 845-3000
6  Facsimile:     (312) 701-2361
7
8  **CHAPMAN AND CUTLER LLP**
   Todd J. Dressel SBN 220812
9  dressel@chapman.com
   595 Market Street, 26th Floor
10 San Francisco, California 94105
   Telephone:     (415) 278-9088
11 Facsimile:     (415) 541-0506
12
   *Attorneys for Defendant UHC of California*
13

                  UNITED STATES BANKRUPTCY COURT
14           FOR THE NORTHERN DISTRICT OF CALIFORNIA
                        SANTA ROSA DIVISION
15

16 | In re: | CASE NO. 12-12753 |
|---|---|
| 17 MENDOCINO COAST HEALTH CARE DISTRICT, a political subdivision of the State of California, | Chapter 9 |
| 18 | ADV. PRO. NO. 13-01026 |
| 19 Debtor, | |
| 20 MENDOCINO COAST HEALTH CARE DISTRICT, a political subdivision of the State of California, | **ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIM OF UHC OF CALIFORNIA TO PLAINTIFF'S COMPLAINT TO DETERMINE VALIDITY AND EXTENT OF LIENS** |
| 21 | |
| 22 Plaintiff, | |
| 23 v. | |
| 24 UHC OF CALIFORNIA AND THE OFFICE OF STATEWIDE HEALTH PLANNING AND DEVELOPMENT OF THE STATE OF CALIFORNIA, | |
| 25 | |
| 26 | |
| 27 Defendants. | |

28

3371674.01.17.doc

NOW COMES UHC of California, a Defendant herein (*"Defendant"*) and for its Answer, Affirmative Defenses and Counterclaim states as follows:

<u>**ANSWER**</u>

**GENERAL DENIAL**

Except as otherwise expressly admitted herein, Defendant denies each and every allegation in the Complaint. Pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure, as made applicable to this action by Rule 7008 of the Federal Rules of Bankruptcy Procedure, averments in the Complaint to which no responsive pleading are required shall be deemed as denied. Defendant expressly reserves the right to seek to amend and/or supplement this Answer, as may be necessary.

**SPECIFIC RESPONSES**

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334, in that it arises in the Plaintiff's Chapter 9 case. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

**ANSWER:**      Defendant admits paragraph 1.

2.      The statutory grounds for the relief requested herein is section 506(a)(1) of the Bankruptcy Code and Rule 7001(2) of the Federal Rules of Bankruptcy Procedure.

**ANSWER:**      Defendant admits the allegations of paragraph 2. Answering further, Defendant states that in addition to Section 506(a)(1) of the Bankruptcy Code and Rule 7001(2) of the Federal Rules of Bankruptcy Code, Plaintiff's Complaint is governed by §§ 902(2)(D), 903, 904, 922(d) and 928(a) of the Bankruptcy Code.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because the proceeding arises in a case under title 11 in this district.

3371674.01.17.doc

1    **ANSWER:**    Defendant admits paragraph 3.

2

3                        **II.    PARTIES**

4    4.    Plaintiff is the debtor in the above-captioned Chapter 9 case and is a political
     subdivision of the State of California.

5

6    **ANSWER:**    Defendant admits paragraph 4.

7    5.    Plaintiff is informed and believes that UHC of California (*"Defendant UHC"*) is a
     corporation organized and existing in accordance with the laws of the State of California.

8

9    **ANSWER:**    Defendant admits paragraph 5.

10   6.    Plaintiff is informed and believes that the Office of Statewide Health Planning
     and Development of the State of California ("Defendant OHSPD") is a division of the Health

11   and Human Services Agency of the State of California.

12   **ANSWER:**    Defendant admits paragraph 6.

13                  **III.    FIRST CLAIM FOR RELIEF**
     **(Validity and Extent of Lien claimed by Defendant UHC - 11 U.S.C. §506(a)(1))**

14

15   7.    Plaintiff realleges and incorporates herein by reference each allegation in
     paragraphs 1 through 6.

16   **ANSWER:**    Defendant incorporates the answers to paragraphs 1 through 6 by

17   reference as if fully set forth herein.

18

19   8.    On November 1, 2011, Plaintiff's Board of Directors passed and adopted
     Resolution No. 2011-5. A copy of Resolution No. 2011-5 is attached hereto as Exhibit A.

20   **ANSWER:**    Defendant admits the allegations of paragraph 8.

21

22   9.    Resolution No. 2011-5 authorizes Plaintiff to issue bonds or otherwise borrow an
     amount not to exceed $2,500,000 in accordance with an indenture.

23   **ANSWER:**    Defendant states that Resolution No. 2011-5 speaks for itself and

24   therefore no response is required.

25

26   10.    Resolution No. 2011-5 approves a form of indenture.

27

28

                                    -2-

1   **ANSWER:** Defendant states that Resolution No. 2011-5 speaks for itself and

2   therefore no response is required.

3       11.     Plaintiff subsequently issued a Report of Proposed Debt Issuance. A copy of the

4   Report of Debt Issuance is attached hereto as Exhibit B.

5       **ANSWER:** Defendant is without information sufficient to admit or deny paragraph

6   11 and therefore denies same. Answering further, Defendant notes that Exhibit B has not been

7   executed by Plaintiff.

8       12.     The Report of Proposed Debt Issuance includes, at page 2, a section entitled

9   "SOURCE(S) OF REPAYMENT" followed by a series of options.

10      **ANSWER:** To the extent the Report of Proposed Debt Issuance attached to Plaintiff's

11  Complaint as Exhibit B purports to be a document issued by Plaintiff, Defendant states that the

12  document speaks for itself and therefore no response is required.

13      13.     Among the options included under "SOURCE(S) OF REPAYMENT" are

14  "General fund of issuing jurisdiction (GNFD)" which box is marked with an "X" and "Special

15  tax revenues" which box is not checked.

16      **ANSWER:** To the extent the Report of Proposed Debt Issuance attached to Plaintiff's

17  Complaint as Exhibit B purports to be a document issued by Plaintiff, Defendant states that the

18  document speaks for itself and therefore no response is required.

19      14.     Plaintiff did not issue bonds to Defendant UHC.

20      **ANSWER:** Defendant admits that Plaintiff did not issue debt to Defendant UHC in

21  the form of bonds but rather issued the debt as Promissory Notes. Defendant denies the

22  remaining allegations in paragraph 14.

23

24      15.     Plaintiff and Defendant UHC executed a Note Purchase Agreement on

    December 8, 2011. A copy of the Note Purchase Agreement is attached hereto as Exhibit C.

25

26

27

28

-3-

1   **ANSWER:**     Defendant admits that it entered into a Note Purchase Agreement with

2   Plaintiff on December 8, 2011.  Defendant respectfully refers the Court to the Note Purchase

3   Agreement for the content and legal effect thereof.

4       16.     The Note Purchase Agreement does not provide a grant of lien or alternative form

5   of security interest and does not reference special tax revenues as defined under applicable state
    law or in section 902(d) of the Bankruptcy Code.

6

7   **ANSWER:**     Paragraph 16 states a legal conclusion and therefore no response is

8   required.  However, to the extent a response is required, Defendant denies the allegations of

9   paragraph 16.

10      17.     Plaintiff and The Bank of New York Mellon Trust Company, N.A., as Trustee

11  entered into an Indenture of Trust dated as of December 1, 2011.  A copy of the Indenture of
    Trust is attached hereto as Exhibit D.

12

13  **ANSWER:**     Upon information and belief, Defendant admits that Plaintiff and The

14  Bank of New York Mellon Trust Company, N.A., as Trustee, entered into an Indenture of Trust

15  dated as of December 1, 2011.  Defendant respectfully refers the Court to the Indenture for the

16  content and legal effect thereof.

17      18.     Plaintiff is informed and believes that there are three separate notes that constitute
    the aggregate total indebtedness of $2,500,000.  Copies of these notes (the "Promissory Notes"),
18  each marked "Specimen," are attached hereto as Exhibits E, F, and G.

19  **ANSWER:**     Defendant admits paragraph 18.  Defendant respectfully refers the Court

20  to the Promissory Notes for the content and legal effect thereof.

21      19.     The Promissory Notes do not provide a grant of lien or alternative form of
22  security interest and do not reference special tax revenues as defined under applicable state law
    or in section 902(d) of the Bankruptcy Code.
23

24  **ANSWER:**     Paragraph 19 states a legal conclusion and therefore no response is

25  required.  However, to the extent a response is required, Defendant denies the allegations of

26  paragraph 19 and incorporates by reference the Affirmative Defenses and Counterclaim to the

27  Complaint.

28

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 5 of 30

20. The Indenture of Trust does not provide a grant of lien or alternative form of security interest and does not reference special tax revenues as defined under applicable state law or in section 902(d) of the Bankruptcy Code.

**ANSWER:** Paragraph 20 states a legal conclusion and therefore no response is required. However, to the extent a response is required, Defendant denies the allegations of paragraph 20 and incorporates by reference the Affirmative Defenses and Counterclaim to the Complaint.

21. A Report of Final Sale was made in connection with the transaction. A copy of the Report of Final Sale is attached hereto as Exhibit H.

**ANSWER:** Defendant is without information sufficient to admit or deny paragraph 21 and therefore denies same. Defendant notes that Exhibit H has not been executed by Plaintiff.

22. The Report of Final Sale includes, at page 2, a section entitled "WAS THE ISSUE INSURED OR GUARANTEED?" The section is followed by a series of options. The only option marked, with an "X," is "No."

**ANSWER:** To the extent the Report of Final Sale attached to Plaintiff's Complaint as Exhibit H purports to be a document issued by Plaintiff, Defendant states that the document speaks for itself and therefore no answer is required.

23. Plaintiff is informed and believes that Plaintiff did not grant a lien upon the assets of Plaintiff in favor of Defendant UHC to secure Plaintiff's performance of the obligations set forth in the Promissory Notes or for any other reason.

**ANSWER:** Defendant denies paragraph 23 and incorporates by reference the Affirmative Defenses and Counterclaim to the Complaint.

24. Plaintiff is informed and believes that Defendant UHC did not record evidence of the existence of a lien upon assets of the Plaintiff in the form of a UCC-1.

**ANSWER:** Defendant admits paragraph 24 and answering further states that the filing of a UCC-1 was not required of Defendant to perfect its interest under applicable law.

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 6 of 30

## IV. SECOND CLAIM FOR RELIEF

**(Validity and Extent of Lien Claimed by Defendant OSHPD - 11 U.S.C. §506(a)(1))**

25.     The Second Claim for Relief is not pleaded against UHC of California, and therefore no answer by UHC of California is required.

## AFFIRMATIVE DEFENSES

Without conceding that it bears the burden of proof as to any of these defenses, Defendant UHC of California alleges the following affirmative defenses to the allegations set forth in the Complaint:

### FIRST AFFIRMATIVE DEFENSE
**(Failure to State a Claim Upon Which Relief can be Granted)**

Plaintiff's First Claim for Relief fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE
**(Continuing Pledge of Special Revenues)**

The Promissory Notes are secured by a pledge and dedication of Special Revenues as defined by § 902(2)(D) of the U.S. Bankruptcy Code (11 U.S.C. § 902(2)(D)).  Specifically, the Notes are secured by the proceeds of Special Revenues dedicated and pledged to the payment of the Notes through the direction by the Office of Statewide Health Planning and Development of the State of California (the *"Office"*) by means of its required consent that the payment of all EHR Recovery and Reinvestment Act of 2009 Grant Funds and Medi-Cal and Medicare reimbursements (*"EHR Reimbursements"*) related to the Debtor's electronic medical records system (*"EMR Equipment and Systems Costs"*) be used to pay off principal and interest of the Notes until the principal balance has been refunded entirely (the *"Dedicated Funds"*).  Pursuant to Sections 7.01 and 8.07 of the Indenture, Available Moneys which include the EHR

Reimbursements, which are Dedicated Funds pursuant to the Office's required consent, are pledged to the payment of the Notes. Such dedicated pledged funds constitute Special Revenues and, pursuant to §§ 902, 922(d) and 928(a) of the Bankruptcy Code, such funds remain subject to the lien of the Office in bankruptcy. The Notes were permitted to be issued and paid by the consent of the Office as required by Section IX of the Amended and Restated Regulatory Agreement dated as of July 1, 2010 (the *"Regulatory Agreement"*) between the District and the Office, which was attached to the District's Complaint as Exhibit J. The District in its November 3, 2011 Letter, which is attached hereto as Exhibit 1, provided that the debt was to be secured by the equipment, and the Office, in its letter of November 10, 2011, which is attached as Exhibit 2 hereto, conditioned its approval upon payment from Dedicated Funds which are part of the Available Moneys on which the Office had a first lien. The Office then sent a letter, dated November 21, 2011, Exhibit I to the District's Complaint and Exhibit 3 attached hereto, in response to the District, authorizing the District to issue the Notes to finance the Project and requiring that all Dedicated Funds be used to pay off principal and interest of the Notes. Thus, the Office consented to the issuance of the Notes strictly conditioned upon the intended earmarking, set aside, pledge and dedication of the Dedicated Funds, Special Revenues, and thus subject to the security interest in bankruptcy, to insure payment of the Notes. The filing of a statement under the Uniform Commercial Code was unnecessary to perfect this interest under applicable law.

### THIRD AFFIRMATIVE DEFENSE
### (Statutory Lien)

The lien of the Office on the funds pledged and dedicated in favor of UHC of California for payment of the Promissory Notes was a statutory lien and, thus, § 552 of the Bankruptcy Code, which would cut off any nonstatutory lien on property acquired after the Bankruptcy

filing is inapplicable. The statutory lien arose automatically under California Health and Safety Code § 129052. The Office dedicated and restricted the use of the Office's statutory lien and the Dedicated Funds solely for the Defendant as successor or assignee until the principal balance on the Notes is refunded entirely. Thus, the Notes have the benefit of the proceeds of the statutory lien for payment of the Notes. The filing of a statement under the Uniform Commercial Code was unnecessary to perfect this statutory lien under applicable law.

### FOURTH AFFIRMATIVE DEFENSE
### (State Law Mandate)

The Office, through its consent to the financing in the November 21, 2011 Letter, mandated the use of the Dedicated Funds for payment of the Notes and no other use, and the District in issuing the Notes has so confirmed. This mandate may not be altered pursuant to §§ 903 and 904 of the Bankruptcy Code.

### FIFTH AFFIRMATIVE DEFENSE
### (Equitable Subrogation)

Defendant UHC of California should be equitably subrogated to the interest of the Plaintiff District. Defendant UHC of California extended funds to Plaintiff to fully pay for Plaintiff's purchase of certain health information technology/electronic health records equipment and software. Defendant extended such funds to Plaintiff, understanding that payment of the Promissory Notes would be secured by the pledge and dedication of Special Revenues with respect to the Available Moneys defined by the Indenture, as consented to, dedicated and assigned by the Office in its November 21, 2011 letter (Exhibit I to Plaintiff's Complaint and Exhibit 3 hereto). The Office through its consent to the financing extended the benefit and intended pledge of the Dedicated Funds arising from the Regulatory Agreement and statutory authority to UHC of California, and the Dedicated Funds are not property of the Estate

that can be used for other purposes. Defendant entered into the transaction under the belief that it would have the benefit of the first right to the Available Moneys (Dedicated Funds) designated, earmarked and pledged by the Office for this purpose. The Plaintiff has applied to governmental entities for reimbursement of the costs paid for EHR Equipment and costs paid for by the proceeds of the Notes. But for the proceeds of the Notes, there would be no EHR Reimbursement or Dedicated Funds, and given the pledge by the District of Available Money and Dedicated Funds and the assignment and dedication by the Office of the EHR Reimbursement, they are not property of the Estate that can be used for other purposes. Equitably subrogating Defendant UHC of California to any interest of the District and the intended subrogation of the Defendant Office's interests by its counsel will prejudice no other parties, does not diminish the Estate but will place the parties in their originally intended positions. The Dedicated Funds and EHR Reimbursement were intended to pay the EMR Equipment and Systems Costs that were paid by the proceeds of the Notes and were only to be used for such purpose under the terms of the Indenture and the consent by the Office, Exhibit 3 hereto. Any other outcome would be inequitable.

### SIXTH AFFIRMATIVE DEFENSE
### (Equitable Estoppel)

Until the filing of its Adversary Complaint, Plaintiff has acted as if the Promissory Notes were secured by a pledge and dedication of Special Revenues. On information and belief, Plaintiff caused regular and scheduled payments of Dedicated Funds to be made to the Trustee for the payment of UHC of California as holder of the Notes. Defendant UHC of California had no knowledge that Plaintiff contended that the Promissory Notes were not secured by such a pledge as now contended by Plaintiff in its Complaint, and, as asserted in the Counterclaim, Defendant has relied to its detriment on the parties' belief that the Promissory Notes were

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 10 of 30

secured by both a pledge of Special Revenues and a statutory lien. Plaintiff is estopped from changing its position and arguing that the Notes are not secured claims. The Plaintiff cannot act in a manner contrary to state law and the intended result of the Regulatory Agreement by reason of § 903 of the Bankruptcy Code.

### SEVENTH AFFIRMATIVE DEFENSE
### (Laches)

Plaintiff is barred from asserting its claim on the grounds of laches through its unreasonable delay in bringing its claims.

### EIGHTH AFFIRMATIVE DEFENSE
### (Waiver)

Upon information and belief, Plaintiff has engaged in certain activities and/or conduct with respect to the events giving rise to this action that are sufficient to constitute a waiver of any claims asserted against Defendant.

### NINTH AFFIRMATIVE DEFENSE
### (Reservation of Rights)

Defendant expressly denies all other allegations not admitted herein. It currently possesses insufficient knowledge or information on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. It reserves the right to assert additional defenses in the event that discovery indicates such additional defenses would be appropriate.

WHEREFORE, Defendant UHC of California respectfully requests that this Court dismiss Plaintiff's Complaint with prejudice, and, in the alternative, that this Court determine that the Notes held by Defendant UHC of California are fully secured pursuant to the District's pledge of Special Revenues and through the valid statutory lien dedicated and assigned by the Office,

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 11 of 30

together with an award of Defendant UHC of California's costs and attorneys' fees, and grant such other relief as may be appropriate.

## COUNTERCLAIM

Defendant UHC of California (*"UHC"*), for its Counterclaim against Mendocino Coast Health Care District (the *"District"*), alleges as follows:

### SUMMARY OF THE ALLEGATIONS

1.      UHC holds three 2011 HIT/EHR Taxable Promissory Notes (the *"Notes"*) in the aggregate amount of $2,500,000 issued by the District, which are secured by a pledge of certain revenue streams of the District.

2.      UHC brings this counterclaim for a declaration of its rights because there is an actual, existing controversy with the District with respect to the rights, duties and obligations of the parties.   In the alternative, UHC seeks equitable relief.

### BACKGROUND

3.      The District, which has filed a petition pursuant to chapter 9 of the U.S. Bankruptcy Code (the *"Bankruptcy Code"*), in the above-referenced proceeding, has issued Notes in the aggregate amount of $2,500,000.  UHC is the registered owner of the three Notes. The Notes all carry an interest rate of 3.75 percent, and are payable semiannually on June 1 and December 1, commencing on June 1, 2013.  The last of the Notes matures on December 1, 2016.

4.      The Notes were issued as part of a state-wide program designed to assist rural healthcare districts to obtain necessary health information technology and electronic health records equipment and software.  These districts would otherwise be unable to qualify for

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 12 of 30

financing at an affordable rate to obtain such necessary technology upgrades. Through the structure developed with the cooperation and consent of the State of California, a system was developed to obtain assistance from private revenue sources to provide funding for such improvements pursuant to a structure that would be acceptable to capital market participants. Accordingly, the Notes were issued to finance health information technology and electronic health records equipment and software (*"EMR Equipment and Systems Costs"*) for the District (the "*Project*") in a structure that would be acceptable to a lender such as UHC. If the EMR Equipment and Systems Costs were not so funded, the District would not only have lost reimbursement of those costs but also other government reimbursements for failure to implement the required mandated medical records system.

5. Because the District had already granted a lien in all of its Gross Revenues to the State of California Office of Statewide Health Planning and Development (the *"Office"*) before issuing the Notes, as required by that certain Regulatory Agreement between the District and the Office and because the Office desire to encourage the participation of UHC in the financing, on November 21, 2011, the Office sent a letter to the District dedicating the proceeds of liens and interests that it held in certain income streams of the District for payment of the then-proposed Notes. The designated amounts included all EHR Recovery and Reinvestment Act of 2009 Grant funds, and Medi-Cal and Medicare reimbursements (*"EHR Reimbursements"*) related to the EMR Equipment and Systems Costs directed to be used to pay off principal and interest of the Notes until the principal balance has been refunded entirely (the *"Dedicated Funds"*). This request followed the original proposal by the District that the Notes actually be secured by a lien on the equipment itself, which is set forth in the November 3, 2011 Letter of the District, Exhibit 1 attached hereto.

6.     As will be described, pursuant to the authorizing documents, the Notes are secured by a pledge of Special Revenues as defined in § 902(2)(D) of the Bankruptcy Code, and, pursuant to § 928(a) of the Bankruptcy Code remain subject to the pledge post-petition. Further, pursuant to § 922(d), the District must continue to pay the principal and interest as it comes due on the Notes.  The pledge is valid and binding without the filing of a statement under the Uniform Commercial Code.

7.     In addition, as the subject of the pledge and dedication of the Office's first priority statutory lien on those revenues designated by the Office for payment of the Notes, the Notes are secured as an intended assignee by a statutory lien in the Dedicated Funds, which arose automatically without further action by the parties.  The statutory lien of the Office and dedication or assignment to pay the Notes is unaffected by § 552 of the Bankruptcy Code and remains in place post-petition.

8.     As a further matter, because the Office, a department of the State of California, which sought to encourage the involvement of UHC in the financing, mandated that the Dedicated Funds be used solely to pay the Notes, this mandate may not be altered pursuant to §§ 903 and 904 of the Bankruptcy Code.

### THE PARTIES

9.     UHC of California is a California corporation with its principal place of business in Cypress, California.

10.     The District is the debtor in the above-captioned Chapter 9 proceeding and is a political subdivision of the State of California.

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 14 of 30

11.    The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

12.    This proceeding arises from the above-captioned chapter 9 proceeding, *In re Mendocino Coast Health Care District*, Case No. 12-12753, pending in the U.S. Bankruptcy Court for the Northern District of California, Santa Rosa Division.

13.    The statutory predicates for relief in this Action are §§ 506, 902(2)(D), 903, 904, 922(d) and 928(a) of the Bankruptcy Code.

14.    This adversary proceeding is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (B), (K) and (O) and the Court may enter a final judgment as to the merits of this case.

## FACTUAL BACKGROUND

**A.    THE REGULATORY AGREEMENT**

15.    Upon information and belief, on or about July 1, 2010, the District and the Office entered into that certain Amended and Restated Regulatory Agreement (the *"Regulatory Agreement"*).  A copy of the Regulatory Agreement is attached to the District's Complaint as Exhibit J.

16.    Pursuant to Section II.A.1 of the Regulatory Agreement, to secure the full and faithful performance of the obligations of the District to the Office under a Contract of Insurance, the District pledged and granted a security interest to the Office "in and to the Gross Revenues, including, but not limited to, future interest in any and all revenues or incomes of any nature or kind which accrue to the District or Facilities, as well as other collateral . . . ."

-14-

17. In addition, pursuant to section II.A.3 of the Regulatory Agreement, the District pledge to the Office and granted the Office a security interest in and to:

> revenues (including Gross Revenues), moneys, accounts, accounts receivable, contract rights, general intangibles, documents, instruments, chattel paper, and other rights to payment of whatever kind, to secure the obligations of the Office under this Regulatory Agreement and the Contract of Insurance. Notice is hereby given that the lien of the above stated pledges creates by this Regulatory Agreement is perfected pursuant to California Health and Safety Code Sec. 129052, which reads in pertinent part:

> "The revenues, moneys, accounts, accounts receivable, contract rights, general intangibles, documents, instruments, chattel paper, and other rights to payment of whatever kind pledged by or to the office or its assignees shall immediately be subject to the lien of the pledge without physical delivery or further act. The lien of such pledge shall be valid and binding against all parties, irrespective of whether the parties have notice of the lien. The indenture, trust agreement, resolution, or another instrument by which such pledge is created need not be recorded or the security interest otherwise perfected."

18. Section IX of the Regulatory Agreement prevented the District from incurring any additional indebtedness, except in certain, enumerated cases. For instance, the Regulatory Agreement permitted the District to incur Long-Term Indebtedness, as defined in the Regulatory Agreement, if, among other things, the Office consented in writing to such indebtedness. (Regulatory Agreement, IX.A.6.)

## B. THE BOND RESOLUTION

19. On or about November 1, 2011, the Board of the District approved that certain Resolution No. 2011-5, entitled "Resolution Authorizing the Execution and Delivery of an Indenture and a Bond Purchase Agreement and Authorizing Certain Other Actions in Connection with the Issuance, Sale and Delivery of the District's 2011 HIT/EHR Taxable

Revenue Bonds" (the *"Resolution"*). A copy of the Resolution is attached to the District's Complaint as Exhibit A.

20. In the Resolution, the Board authorized the issuance of debt not to exceed $2,500,000 to finance the Project -- the EMR Equipment and Systems Costs.

21. The District in the Resolution further designated that the debt would:

> be payable from 'Available Moneys,' being all legally available moneys, income, receipts and moneys received by or on behalf of the District, excluding gifts, grants, bequests, donations and contributions to the extent specifically restricted by the donor to a particular purpose inconsistent with their use for the payment of debt service on the Bonds and excluding *ad valorem* tax revenue securing general obligation bonds of the District; ***provided, however,* that the application of Available Moneys for the payment of debt service on the [debt] will be subject to any pledges of such revenues, income, receipts and moneys received by or on behalf of the District heretofore or hereafter made by the District . . . .** (Emphasis added.)

22. The Resolution authorized and approved the Project, "with such changes as are finally approved by two of the following officers: the President of the Board of Directors of the District, the Chief Executive Officer and/or the Chief Financial Officer" and ratified all future actions taken with respect to "planning, negotiation, authorization, approval and implementation of the financing plan." The only changes that could not be approved pursuant to the Resolution were the extension of the term of the debt to exceed five years and the interest rate on the debt could not be greater than 4 percent.

23. As will be discussed, the final form of the financing, through the Note Purchase Agreement, provided for the issuance of Notes rather than Bonds and was approved by the District's Chief Executive Officer and Chief Financial Officer, as indicated on page 7 of the Note Purchase Agreement, attached as Exhibit C to the District's Complaint. The issuance of the Notes was authorized under the clear terms of the Resolution.

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 17 of 30

## C.   AUTHORIZATION OF THE NOTES BY THE OFFICE

24.   Due to Section IX of the Regulatory Agreement, the District could not issue the Notes without written approval of the Office.  This was necessary because the Notes met the Regulatory Agreement's definition of "Long-Term Indebtedness" (Regulatory Agreement, § I.B.32), requiring Office approval of the issuance.

25.   Approval was further required by the Office because the Office held a first priority lien in virtually all of the District's funds and rights to payment.

26.   As a result, on or about November 3, 2011, Wayne C. Allen, representing the District, sent a letter to the Office, requesting approval to issue debt in the principal amount of $2.5 million (the *"District's Letter"*).  The District's Letter recognized that the sole purpose for the borrowing would be to finance the Project, namely the EMR Equipment and Systems Costs. A copy of the District's Letter is attached hereto as Exhibit 1 to this Counterclaim and incorporated herein.  The District's Letter proposed the issuance of debt secured by the Project equipment.

27.   The Office responded to the District's Letter twice, on or about November 10, 2011 (the "*November 10, 2011 Letter*") and on or about November 21, 2011 (the "*November 21, 2011 Letter*").   A copy of each of these letters is attached hereto as Exhibits 2 and 3 respectfully.  The sole substantive difference between these two letters is that the November 10, 2011 Letter granted the Office's permission for the District to issue $2,500,000 Fixed Rate Taxable Revenue Bonds, whereas the November 21, 2011 Letter authorized the District to issue $2,500,000 Fixed Rate Promissory Notes.

28.   Both letters were contingent on the following conditions:

> 1.   The [debt] shall not exceed $2,500,000 in principal, and shall be fully paid off within 5 years from the date of closing.

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 18 of 30

2. The District must use loan proceeds only for expenses related to the District's Electronic Medical Records system. Additionally, all EHR Recovery and Reinvestment Act of 2009 Grant funds, Medi-Cal and Medicare reimbursements [EHR Reimbursements] related to the District's Electronic Medical Records system, must be used to pay off principal and interest of the bonds, until principal balance is refunded entirely [(as defined above, the *"Dedicated Funds"*)].

29. The Office would not have agreed to the issuance of the Notes without the pledge of the Dedicated Funds to pay the Notes as part of its overall plan for the District. After receiving the Office's November 21, 2011 Letter, the District proceeded with its note issuance plan. The Office's required consent dedicated and assigned the EHR Reimbursements on which the Office had a statutory lien to pay the Notes. Hence, the EHR Reimbursements (Dedicated Funds) are not property of the Estate that can be used for other purposes.

**D.   THE INDENTURE**

30. On or about December 1, 2011, the District and the Bank of New York Mellon Trust Company, N.A., as Trustee (the *"Trustee"*), entered into that certain Indenture of Trust, relating to $2,500,000 Mendocino Coast Health Care District 2011 HIT/EHR Taxable Promissory Notes. A copy of the Indenture is attached to the District's Complaint as Exhibit D.

31. Pursuant to Section 3.02 of the Indenture, the District agreed that the proceeds of the Notes would be held in a segregated fund or account to be used solely to pay or reimburse costs of the Project (EMR Equipment and Systems Costs) and would be used for no other purpose. Upon completion of the Project, the District was to apply any remaining proceeds of the Notes to prepay the outstanding principal balance of the Notes. Thus, the structure of the financing was to ensure the protection of UHC with respect to the financing of the Project.

32. Pursuant to Section 5.01 of the Indenture, the Notes may only be paid out of Available Moneys.

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 19 of 30

33.     Almost identical to the language of the Resolution, the Indenture defines "Available Moneys" as meaning:

> all legally available moneys, income, receipts and moneys received by or on behalf of the District, excluding gifts, grants, bequests, donations and contributions to the extent specifically restricted by the donor to a particular purpose inconsistent with their use for the payment of debt service on the Notes and excluding ad valorem tax revenue securing general obligation bonds of the District; *provided, however,* that the application of Available Moneys hereunder for the payment of debt service on the Notes is subject to any pledges of such revenues, income, receipts and moneys received by or on behalf of the District heretofore or hereafter made by the District.

34.     The District was obliged pursuant to Section 7.01 of the Indenture to pay the Notes out of "Available Moneys and other assets pledged for payment as provided in this Indenture."

35.     Further, pursuant to section 8.07 of the Indenture, it is the "absolute and unconditional" obligation of the District "to pay the principal or Redemption Price of and interest on the Notes to the Owner [UHC] at their respective dates of maturity, or upon call for redemption, as herein provided, ***but only out of the Available Moneys and other assets herein pledged therefore*** . . . ." (Emphasis added.)  Thus, the terms of the Indenture, including but not limited to Section 7.01 and 8.07, clearly recognize the pledge of Available Moneys, including those Dedicated Funds subject to the interest of the Office.  This structure was developed in order to assure UHC and the Office that the Notes would be paid from the Dedicated Funds related to the Project.

36.     Due to the Office's blanket lien on the Gross Revenues of the District, legally available funds securing the Notes were the Dedicated Funds earmarked and assigned by the Office in the November 21, 2011 Letter solely for payment of the Notes. (Nov. 21, 2011 Letter,

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 20 of 30

Ex. 3 at 2.)  Accordingly, the Indenture clearly reflects a recognition that the Notes would have the benefit of the Dedicated Funds as required by the Office.

**E.    THE NOTE PURCHASE AGREEMENT AND ISSUANCE OF THE NOTES**

37.    On or about December 8, 2011, the District and UHC entered into that certain Note Purchase Agreement, in which UHC agreed to purchase $2.5 million in aggregate principal amount of the Notes, payable with Available Moneys, as defined in the Resolution and Indenture to include funds subject to the pledge of the Office.  A copy of the Note Purchase Agreement is attached to the District's Complaint at Exhibit C.

38.    As a result, on or about December 9, 2011, the District issued the three Taxable Promissory Notes, due December 1, 2014, December 1, 2015 and December 1, 2016, respectively, totaling $2.5 million.  All carry an interest rate of 3.75 percent.  Copies of the three Notes are attached to the District's Complaint as Exhibits E, F and G.

39.    UHC is the registered owner of all three Notes.  (Each of these Notes acknowledge that payment is to be made to the owners with reference to the Indenture and law and the extent of security thereunder payable from Available Moneys as defined in the Indenture.)

**COUNT I**
**(Declaratory Judgment that Notes Secured by Pledge of Special Revenues)**

40.    UHC repeats and realleges paragraphs 1 through 39 as if set forth fully herein.

41.    This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

42.    The Notes are validly issued debts of the District.

43.    This is an actual and justiciable controversy between UHC and the District. Pursuant to §§ 902(2)(D), 922(d) and 928(a) of the Bankruptcy Code, Defendant UHC holds a

continuing lien in the Dedicated Funds, a subset of the Available Moneys, as evidenced by the November 21, 2011 Letter and the Indenture. The District ignores the provisions of the November 21, 2011 Letter and the Indenture to assert that the Notes are unsecured obligations.

44. Section 902(2)(D) of the Bankruptcy Code defines "Special Revenues" as "other revenues or receipts derived from particular functions of the debtor . . .," which includes both the definition of Available Moneys in the Indenture and the Dedicated Funds of the November 21, 2011 Letter.

45. Pursuant to § 922(d) of the Bankruptcy Code, because the Notes are secured by a pledge of "Special Revenues," the District must continue to pay the Notes, using the Dedicated Funds, as authorized by the Office, pursuant to the Notes' terms, regardless of the fact that the District has filed a bankruptcy petition.

46. In addition, pursuant to § 928(a) of the Bankruptcy Code, all funds obtained by the District that are pledged and dedicated to pay the Notes remain subject to the lien of the Office assigned for the purpose of the payment of the Notes that arose under the financing-related documents and are not property of the Estate that can be used for other purposes.

47. A judicial declaration will resolve the dispute giving rise to the proceeding and is necessary an appropriate at this time under the circumstances to determine that UHC continues to hold a valid and perfected lien in the pledged Available Moneys, including the Dedicated Funds, which constitute Special Revenues, that such Dedicated Funds are not property of the Estate that can be used for other purposes, and the District must continue to pay principal and interest on the Notes as it comes due, as if its bankruptcy filing had never occurred.

### COUNT II
### (Declaratory Judgment that Notes Secured by Statutory Lien)

48. UHC repeats and realleges paragraphs 1 through 47 as if set forth fully herein.

49.     This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

50.     The Notes are validly issued debts of the District.

51.     Pursuant to California Health & Safety Code § 129052, all amounts pledged by the District to the Office *or to its assignees* is immediately subject to the lien of the pledge without physical delivery or further act -- a statutory lien.

52.     This is an actual and justiciable controversy between UHC and the District. By virtue of the Office's dedication and pledge of its lien in the Dedicated Funds for payment of the Notes as indicated in the November 21, 2011 Letter, the Notes are secured by an automatically arising statutory lien and, thus, § 552 of the Bankruptcy Code, which would cut off any nonstatutory lien on property acquired after the District's bankruptcy filing, is inapplicable. The District ignores the Office's dedication in the November 21, 2011 Letter to assert that the Notes are unsecured obligations.

53.     A judicial declaration will resolve the dispute giving rise to the proceeding and is necessary and appropriate at this time under the circumstances to determine that the Notes owned by UHC remain subject to the statutory lien that arose by virtue of the Regulatory Agreement with respect to the Dedicated Funds that the Office assigned for payment of the Notes. Because the Office's lien arose automatically without any further requirement, and UHC by virtue of the November 21, 2011 Letter became the successor to that lien with respect to the Dedicated Funds, the Dedicated Funds are not property of the Estate that can be used for other purposes and the Dedicated Funds continue to be secured by a statutory lien, which is unaffected by § 552 of the Bankruptcy Code, and the District may not alter or stop payment under the terms of the Notes.

## COUNT III
### (Declaratory Judgment that Security of Notes May Not Be Altered)

54.    UHC repeats and realleges paragraphs 1 through 53 as if set forth fully herein.

55.    This claim for relief arises under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201.

56.    The Notes are validly issued debts of the District.

57.    This is an actual and justiciable controversy between UHC and the District.  The Office, through its consent to the financing in the November 21, 2011 Letter, mandated the use of the Dedicated Funds for payment of the Notes and no other use, and the District in issuing the Notes has so confirmed.  This mandate may not be altered pursuant to §§ 903 and 904 of the Bankruptcy Code.  The District ignores the Office's dedication in the November 21, 2011 Letter to assert that the Notes are unsecured obligations.

58.    A judicial declaration will resolve the dispute giving rise to the proceeding and is necessary and appropriate at this time under the circumstances to determine that UHC continues to hold a valid and perfected lien in the Dedicated Funds included in the pledged Available Moneys and the District may not alter or stop payment under the terms of the Notes due to the Office's mandate as to the use of the Dedicated Funds to pay the Notes.

## COUNT IV
### (Equitable Subrogation)

59.    UHC repeats and realleges paragraphs 1 through 58 as if set forth fully herein.

60.    On or about December 9, 2011, the District borrowed $2.5 million in funds from UHC to finance completely the Project.

61.    Because the Office held a first priority lien in the Gross Revenues of the District, as defined in the Regulatory Agreement, the Office designated the Dedicated Funds -- those

Case: 13-01026   Doc# 6   Filed: 04/05/13   Entered: 04/05/13 11:08:09   Page 24 of 30

certain streams of revenue to which the Office's first priority lien attached -- as funds for which the District must use to pay the Notes issued to UHC.

62.     When entering into the transaction to finance the Project, and (a) pursuant to UHC's understanding that the Notes would be subject to a pledge of the Dedicated Funds assigned, conveyed and dedicated by the Office in its consent and (b) by the District through its actions in pledging Available Moneys for the payment of the Notes and (c) by the District issuing the Notes pursuant to that consent and making payment to the Trustee pursuant thereto, UHC was not acting gratuitously or as a volunteer or as an intruder.

63.     At no time before entering into the Note Purchase Agreement or becoming Registered Owner of the Notes was UHC primarily liable for the District's debt with respect to the Project, but rather the District was primarily liable for its debt.

64.     The funds provided by UHC to the District were sufficient to pay the entire amount of the Project.

65.     UHC has a right to equitable subrogation, based on principles of equity and unjust enrichment, in that it provided full funding to the District for the Project with the understanding that the Notes would be paid with a secured pledge of the Dedicated Funds (EHR Reimbursements) and Available Moneys.

66.     Because the Office holds a blanket, first priority lien on the District's Gross Revenues and designated that the Dedicated Funds (EHR Reimbursements) be used to pay the Notes and the Dedicated Funds are not property of the Estate that can be used for other purposes, equitable subrogation in this instance would not work an injustice as to the rights of others since the Office has consented and the District is required to be in compliance with the consent under the Regulatory Agreement.

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 25 of 30

67.     In equity and good conscience, UHC, the Office's assignee, should be placed in the same position as the Office with respect to the Dedicated Funds.

### COUNT V
### (Equitable Estoppel)

68.     UHC repeats and realleges paragraphs 1 through 67 as if set forth fully herein.

69.     The District is party to the Regulatory Agreement, Indenture and Note Purchase Agreement, issued the Resolution, and upon information and belief, received the November 21, 2011 Letter from the Office in response to the District's November 3, 2011 Letter.   The District at all times has had full knowledge of the facts surrounding the Notes and the financing of its Project.

70.     Until the filing of its Adversary Proceeding, the District has acted as though the Notes were fully secured and has made payment to the Trustee for the Notes as required by the terms of the Indenture.

71.     Until the filing of its Adversary Complaint, UHC of California was unaware that the District had altered its position to assert that the Notes were no longer secured by a pledge of Special Revenues and a statutory lien.

72.     At all times, UHC of California relied on the District's understanding and pledge of Available Moneys at the insistence of the Office that the Notes were secured by both a pledge of Special Revenues and statutory lien and relied on the District's conduct to its detriment.

73.     Based on these facts, the District is equitable estoped from now asserting that the Notes are unsecured obligations.

### COUNT VI
### (Unjust Enrichment)

74.     UHC repeats and realleges paragraphs 1 through 73 as if set forth fully herein.

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 26 of 30

75.    A benefit was conferred on the District when UHC of California provided it with funds to finance the costs of District's Project.

76.    The District knowingly received this benefit from UHC of California, as indicated in the Note Purchase Agreement, and applied for EHR Reimbursements from government sources based on the Note proceeds having paid the EMR Equipment and Systems Costs. EHR Reimbursements are to be paid to those who actually paid the related costs.

77.    The District is not entitled to the benefit received, namely the EHR Reimbursements paid for by the Note proceeds and has retained this benefit at the expense of UHC.

78.    It would be unjust under the circumstances for the District to retain the benefit.

**COUNT VII**
**(Accounting)**

79.    UHC repeats and realleges paragraphs 1 through 78 as if fully set forth herein.

80.    Pursuant to the terms of the Resolution and the Indenture, the Notes are to be paid from Available Moneys subject to the dedication and pledge of the Office of the Dedicated Funds, namely reimbursements related to the Project obtained from third parties.

81.    Pursuant to the terms of Section 3.02 of the Indenture, the District covenanted that the proceeds of the Notes would be held in a segregated fund or account and would be used solely to pay or reimburse costs of the Project and would be used for no other purpose. Upon completion of the Project, the District agreed to apply any remaining proceeds of the Notes in excess of amounts applied to payment of the costs of the Project to prepayment of the outstanding principal balance of the Notes.

82.    The District received the entire $2,500,000 proceeds of the Note Issue loaned by UHC.

83.     In addition, the District has received certain proceeds of EHR Recovery and Reinvestment Act of 2009 Grant Funds and Medi-Cal and Medicare reimbursements related to the District's Electronic Medical Records systems previously defined as the EHR Reimbursements.

84.     The minutes of the Finance Committee Meeting of the Board of Directors of the District, dated February 26, 2013, reports the existence of a "Board restricted funded depreciation account" (*"Board Account"*) comprised of, among other things, $1,048,466 of funds remaining from the UHC Loan to install meaningful use software/equipment and $1,648,225 of funds received from Medicare/Medi-Cal for approved attestation of meaningful use incentive program.

85.     On information and belief, this Board Account is not in the nature of the segregated fund or account required by Section 3.02 of the Indenture.  Further, on information and belief, certain proceeds of the Notes have not been used by the District for the purposes of the Project.  Further, on information and belief, all the EHR Reimbursements have not been applied to the payment of principal and interest on the Notes as required by the Office.

86.     The District has never disclosed how the proceeds of the Note issuance have been used, why over one million dollars in proceeds of the Notes have not been expended on the Project, or the amount of EHR Reimbursements that have been received and how they have been applied by the District.  On information and belief, certain proceeds of the Notes and EHR Reimbursements may not have been applied as required by the Resolution and the Indenture.

87.     Under the terms of the Indenture, if the Project has, in fact, been completed, any remaining proceeds of the Notes should have been applied to their payment.  Further, under the pledge and dedication and assignment by the Office, the EHR Reimbursements should have

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 28 of 30

been used for the payment of the Notes. The brief reference in the February 26, 2013 minutes regarding the Board Account raises a question of whether the District has complied with the terms of the issuance of the Notes and the pledge and dedication and assignment by the Office.

88. Such facts are uniquely in the possession of the District and UHC has no adequate remedy at law. Because of the complexities of the District's accounts and that the District's use of the proceeds and EHR Reimbursement is unclear at best, an accounting is necessary in this instance.

89. UHC is entitled, under the Resolution, the Indenture and applicable law, including but not limited to under §§ 902(2)(D), 922(d) and 928(a) of the Bankruptcy Code, to an equitable accounting of the proceeds of the Note Issue and EHR Reimbursements received by the District, including the use of such proceeds and EHR Reimbursements for other purposes other than as required.

WHEREFORE, UHC respectfully requests the Court to declare:

(a) that the Notes are secured by a pledge of Special Revenues as defined under § 902(2)(D) of the Bankruptcy Code, and pursuant to §§ 902, 922(d) and 928(a) of the Bankruptcy Code, the Notes remain subject to the pledge of Special Revenues;

(b) that, the lien of the Office that was the subject to the Office's consent in the November 21, 2011 Letter and pledge and dedication and assignment by the Office with respect to the Dedicated Funds is a statutory lien and thus § 552 of the Bankruptcy Code, which would cut off any nonstatutory lien on property acquired after the Bankruptcy filing, is inapplicable;

(c) that, because the Office, through its consent to the financing has mandated the use of the Dedicated Funds for payment of the Notes and no other use, and the District in

-28-

issuing the Notes has so confirmed, this mandate may not be altered pursuant to §§ 903 and 904 of the Bankruptcy Code;

(d)     that the Dedicated Funds are not property of the Estate that can be used for any other purpose other than paying the Notes;

(e)     that, in the event the Court determines that the revenues pledged to pay the Notes are not a pledge of Special Revenues or subject to a statutory lien or protected by the Office's mandate, that UHC be equitably subrogated to the same rights as the Office with respect to the Dedicated Funds;

(f)     that the District is equitably estopped from asserting that the Notes are unsecured obligations;

(g)     that UHC of California is entitled to damages in the amount that the District was unjustly enriched;

(h)     that UHC is entitled to an accounting of the use of the proceeds of the Note issuance and receipt and use of Dedicated Funds, including the funds in the "restricted depreciation account"; and

(i)     such other relief as may appear appropriate and equitable.

Dated: April 5, 2013
San Francisco, California

CHAPMAN AND CUTLER LLP


By:     s/ Todd J. Dressel
                Todd J. Dressel
                Attorneys for Defendants

Case: 13-01026    Doc# 6    Filed: 04/05/13    Entered: 04/05/13 11:08:09    Page 30 of 30